**WYNNE LAW FIRM**
Edward J. Wynne      (SBN 165819)
ewynne@wynnelawfirm.com
100 Drakes Landing Road Ste. 275
Greenbrae, CA 94904
Telephone: (415) 461-6400
Facsimile: (415) 461-3900

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY LAPAN, ASHWIN CHANDRA, CLAUDIA BLEUS, on behalf of themselves and all others similarly situated, | **Case No.  13-cv-05006-LHK** |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| PVH CORP., TOMMY HILFIGER RETAIL, LLC, PVH RETAIL STORES, LLC, PVH WHOLESALE NEW JERSEY INC., PVH NECKWEAR INC., PVH WHOLESALE CORP., PVH PUERTO RICO, INC., CALVIN KLEIN, INC., TOMMY HILFIGER USA, INC., PVH GUAM, INC., WARNACO, INC., WARNACO U.S., INC., WARNACO GROUP, INC., AND WARNACO SWIMWEAR PRODUCTS, INC. | |
| Defendants. | Date:  August 27, 2015<br>Time: 1:30 p.m.<br>Judge: Lucy H. Koh<br>Ctrm. 8 |

TO THE COURT AND ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on August 27, 2015 at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of Hon. Lucy H. Koh, United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, in Courtroom 8, Jeffrey Lapan, Ashwin Chandra, and Claudia Bleus ("Plaintiffs") will and hereby do respectfully move the court for preliminary approval of the proposed class action settlement. Specifically, Plaintiffs respectfully request that the Court (1) grant preliminary approval for the proposed class action settlement; (2) grant conditional certification of the proposed settlement class; (3) authorize the mailing of the proposed notice to the class of the settlement; and (4) schedule a "fairness hearing," i.e., a hearing on the final approval of the settlement.

Plaintiffs make this motion on the grounds that the proposed settlement is within the range of possible final approval, and notice should, therefore, be provided to the class. This Motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Edward J. Wynne, Joint Stipulation of Class Action Settlement and Release any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

Dated:  March 30, 2015                           WYNNE LAW FIRM


                                                 /s/ Edward J. Wynne
                                                 Edward J. Wynne
                                                 Attorneys for Plaintiffs

**Table of Contents**

I.      INTRODUCTION ................................................................................................. 1
II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY................................ 1
        A.      Statement of Facts ................................................................................. 1
        B.      Procedural History Of The Case ............................................................ 3
III.    SETTLEMENT TERMS ...................................................................................... 6
        A.      Settlement Fund .................................................................................... 6
        B.      Class Definition ..................................................................................... 7
                1.      Nationwide Settlement Class .................................................... 7
                2.      FLSA Settlement Class .............................................................. 7
                3.      California Class .......................................................................... 7
        C.      Class Representatives and Class Counsel ............................................. 7
        D.      Notice Procedure................................................................................... 8
        E.      Plan of Allocation. ................................................................................ 8
                1.      Net Settlement Fund .................................................................. 8
                2.      Attorney's Fees, Costs and Enhancements ............................... 9
                3.      LWDA payment ........................................................................ 9
IV.     THE STANDARDS FOR PRELIMINARY APPROVAL ARE
        SATISFIED........................................................................................................ 10
        A.      The Standard for Preliminary Approval .............................................. 10
        B.      Strength of Plaintiffs' Case ................................................................. 11
        C.      The Risk, Expense, Complexity, And Likely Duration Of Further
                Litigation............................................................................................. 14
        D.      The Amount Offered In Settlement. .................................................... 15
                1.      FLSA Claims ........................................................................... 15
                2.      Breach of Contract .................................................................. 15
                3.      California Claims ..................................................................... 16
        E.      Extent of Discovery Completed........................................................... 17
        F.      Experience and View of Counsel. ....................................................... 17
V.      THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES........................ 18
        A.      The Nationwide and California Classes Meet the Requirements of
                Rule 23(a)............................................................................................ 18
                1.      Numerosity............................................................................... 18
                2.      Commonality............................................................................ 18
                3.      Typicality ................................................................................. 19
                4.      Adequacy ................................................................................. 19
        B.      The Nationwide and California Classes Meet the Requirements of
                Rule 23(b)(3)....................................................................................... 19
        C.      The Nationwide FLSA Class Meets the Standard for Conditional
                Certification. ....................................................................................... 21
VI.     THE PROPOSED CLASS NOTICE IS THE BEST NOTICE
        PRACTICABLE  UNDER THE CIRCUMSTANCES ......................................... 22
VII.    CONCLUSION.................................................................................................. 23

1

## <u>Table of Authorities</u>

2

3

## <u>Federal Cases</u>

*Amchem Products, Inc. v. Windsor*
4    521 U.S. 591 (1997) ........................................................................................................... 19

5 *Boyd v. Bechtel Corp.*
   485 F. Supp. 610 (N.D. Cal.1979) ..................................................................................... 14
6

7 *Chao v. A-One Medical Servs., Inc.*
   346 F.3d 908 (9th Cir. 2003) .............................................................................................. 13

8 *Churchill Village, LLC v. General Electric*
   361 F.3d 566 (9th Cir. 2004) .............................................................................................. 22
9

10 *Flores v. City of San Gabriel*
   No. CV 12-04884-JGB, 2013 WL 5817507 (C.D. Cal. Oct. 29, 2013) ............................. 13

11 *Forcellati v. Hyland's, Inc.*
   876 F. Supp. 2d 1155 (C.D. Cal. 2012) ............................................................................. 21
12

13 *Gautreaux v. Pierce*
   690 F.2d at 616 (7th Cir. 1982) ......................................................................................... 10

14 *Gen. Tel. Co. of Southwest v. Falcon*
   457 U.S. 147 (1982) ........................................................................................................... 18
15

16 *Hammon v. Barry*
   752 F. Supp. 1087 (DDC 1990) ........................................................................................ 17

17 *Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ............................................................... 9, 11, 18, 19, 21
18

19 *In re Armored Car Anti - Trust Litigation*
   472 F. Supp. 1357 (ND GA 1979) .................................................................................... 17

20 *In re General Motors Corp.*
   55 F.3d 768 (3rd Cir.1995) ................................................................................................ 14
21

22 *In re Traffic Executive Association-Eastern Railroads*
   627 F.2d 631 (2d Cir. 1980) .............................................................................................. 11

23 *In re Wells Fargo Home Mortgage Overtime Pay Litig.*
   527 F. Supp. 2d 1053 (N.D. Cal. 2007) ............................................................................. 21

24 *Jackson v. New York Telephone Co.*
   163 F.R.D. 429 (S.D.N.Y.1995) ........................................................................................ 22
25

26 *Jimenez v. AllState Indem. Co.*
   No. 07–14494, 2010 U.S. Dist. LEXIS 95993, 2010 WL 3623176 (E.D.Mich. Sept. 15,
27    2010) .................................................................................................................................. 20

28

*Lerwill v. Inflight Motion Pictures, Inc.*
    582 F.2d 507 (9th Cir. 1978) ................................................................. 19

*Leuthold v. Destination America, Inc.*
    224 F.R.D. 462 (N.D.Cal.2004) ............................................................. 22

*Linney v. Cellular Alaska Partnership*
    151 F.3d 1234 (9th Cir. 1998) ............................................................... 10

*Mazza v. American Honda Motor Co., Inc.*
    666 F.3d 581 (9th Cir. 2012) ................................................................. 21

*McLaughlin v. Richland Shoe Co.*
    486 US 128 (1988) ................................................................................. 13

*Officers for Justice v. Civil Service Comm'n*
    688 F.2d 615 (9th Cir. 1982) ................................................................. 10

*Overton v. Hat World, Inc.*
    2012 U.S. Dist. LEXIS 144116 (E.D. Cal. 2012) .................................. 23

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*
    79 F.R.D. 571 (ED PA 1978) ................................................................ 17

*Steinberg v. Carey*
    470 F. Supp. 471 (NY 1979) ................................................................. 17

*Stewart v. Abraham*
    275 F.3d 220 (3d Cir. 2001) .................................................................. 18

*Takacs v. A.G. Edwards and Sons, Inc.*
    444 F.Supp.2d 1100 (S.D. Cal. 2006) ................................................... 13

*Torrisi v. Tucson Elec. Power Co.*
    8 F.3d 1370 (9th Cir. 1993) ................................................................... 11

*Ulin v. ALAEA-72, Inc.*
    No. C-09-3160-EDL, 2011 WL 723617 (N.D. Cal. Feb. 23, 2011) ........ 13

*Villegas v. J.P. Morgan Chase & Co.*
    No. CV 09-00261 SBA EMC, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) .......... 9

*Wal-Mart Stores v. Dukes*
    564 U.S. ___, 131 S.Ct. 2541 (2011) .................................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*
    396 F.3d 96 (2nd Cir. 2005) .................................................................. 11

*Walters v. Reno*
    145 F.3d 1032 (9th Cir. 1998) ............................................................... 18

*Wu v. Pearson Educ. Inc.*
    277 F.R.D. 255 (S.D.N.Y.2011) ............................................................ 20

1

**State Cases**

*Amaral v. Cintas Corp. No. 2*
   163 Cal.App.4th 1157 (2008) ............................................... 16

*Duran v. U.S. Bank N.A.*
   59 Cal.4th 1 (2014) ............................................................... 14

*Washington Mutual v. Superior Court*
   24 Cal.4th 906 (2001) ........................................................... 21

**Statutes, Rules & Regulations**

29 Code of Federal Regulations
   § 531.35 ................................................................................ 13

29 United States Code
   § 255(a) ................................................................................ 13

29 United States Code
   § 216 (b) ............................................................................... 21

California Business & Professions Code
   § 17200 ........................................................... 1, 3, 14, 16

California Labor Code
   § 212 ................................................................................ 11, 14

California Labor Code
   § 1182.11 ............................................................................. 14

California Labor Code
   § 1182.12 ............................................................................. 14

California Labor Code
   § 1194 ................................................................................... 14

California Labor Code
   § 203 ............................................................................... 14, 16

California Labor Code
   § 213 .................................................................................... 11

California Labor Code
   § 216 ................................................................................... 14

California Labor Code
   § 221 ................................................................................... 14

California Labor Code
   § 224 ............................................................................... 14, 22

California Labor Code
   § 226 ............................................................................... 14, 16

California Labor Code
   § 2699 .......................................................................................................... 5, 9, 14

California Labor Code
   § 2699(i) ................................................................................................................ 9

California Labor Code
   § 2802 ................................................................................................................. 14

Federal Rules of Civil Procedure
   23 ................................................................................................................... passim

**Other Authorities**

California Labor Commissioner Opinon Letter July 7, 2008 ..................................... 11

California Labor Commissioner Opinion Letter July 7, 2008-2 ................................. 11

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure*
   (2d ed. 1986) ........................................................................................................ 20

Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002) ............................ 10, 18

*Manual for Complex Litigation, Fourth*, (2004) ......................................................... 10

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLMENT;
PLAINTIFFS' MEMORANDUM IN SUPPORT THEREOF
13-cv-05006-LHK

## I.     INTRODUCTION

Plaintiffs Jeffrey Lapan, Ashwin Chandra, and Claudia Bleus ("Plaintiffs") present this non-reversionary $725,000 proposed settlement for the Court's approval. The proposed conditional settlement before this Court will dispose of this case against defendants PVH Corp., Tommy Hilfiger Retail, LLC, PVH Retail Stores, LLC, PVH Wholesale New Jersey Inc., PVH Neckwear Inc., PVH Wholesale Corp., PVH Puerto Rico, Inc., Calvin Klein, Inc., Tommy Hilfiger USA, Inc., PVH Guam, Inc., Warnaco, Inc., Warnaco U.S., Inc., and Warnaco Swimwear Products, Inc. (collectively, "Defendants").

Plaintiffs' claims arise out of Defendants' use of the Money Network Payroll Distribution Service which Defendants use to pay their employees. Plaintiffs allege that the Payroll Service unlawfully causes them to be charged fees for access to their wages.  Plaintiffs have alleged nationwide and California classes. Plaintiffs have alleged a nationwide breach of contract claim and a nationwide Fair Labor Standards Act claim, 29 U.S.C. § 201 *et seq*. Plaintiffs have also alleged Labor Code violations, Bus. & Prof. Code § 17200 *et seq*. violations, and conversion on behalf of a California class. Defendants deny Plaintiffs' allegations.

After conducting party-related and third-party discovery, the parties conducted a mediation before Lisa M. Bertain of Keesal, Young & Logan on December 9, 2014 and reached the settlement that is being proposed to the Court.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.     Statement of Facts

PVH Corp. is a publicly traded company with its principal place of business in New York, New York.  PVH Corp. is one of the world's largest apparel companies and, as a segment of its business, operates retail stores, principally in outlet malls, under brands such as *Calvin Klein, Tommy Hilfiger, Van Heusen, IZOD,* and *G. H. Bass & Co.*  Tommy Hilfiger Retail, LLC and PVH Retail Stores, LLC are wholly-owned subsidiaries of PVH Corp. PVH Corp. also owns the following other subsidiaries:  PVH Wholesale New Jersey Inc., PVH Neckwear Inc., PVH Wholesale Corp., PVH Puerto Rico, Inc., Calvin Klein, Inc., Tommy Hilfiger USA, Inc.,

PVH Guam, Inc., Warnaco, Inc., Warnaco U.S., Inc., Warnaco Group, Inc., and Warnaco Swimwear Products, Inc.  The bulk of the PVH Corp. family of companies employees are employed by PVH Corp. and PVH Retail Stores, LLC.

Defendants use the Money Network Payroll Distribution Service ("MN Payroll Service") to pay their employees. The MN Payroll Service is run through PVH Corp.'s payroll vendor ADP, Inc. and is managed by Money Network Financial, LLC, a subsidiary of First Data Trust Company, LLC.

All of the PVH Corp. family of companies utilize the MN Payroll Service and make it available to all of their employees at all levels. Defendants have only used the MN Payroll Service. Since roll-out in March 2009, employees have a choice between direct deposit and the MN Payroll Service. Accordingly, if an employee does not have a checking or saving account (i.e., a demand deposit account), the employee must be paid through the MN Payroll Service. The employees cannot choose to use a different payroll service provider, they cannot negotiate the types of fees, the amount of fees or the frequency of fees, nor can they refuse to pay a fee. Basically, all of Defendants' employees paid through the MN Payroll Service receive the same program with the same terms and conditions without variation.

Plaintiffs allege that when new employees are hired, all of them are told that they will be paid in accordance with state and federal law. All employees are told this through PVH's handbook which is provided to all employees. The handbook applies to all of Defendants' employees. As consideration for paying their employees in accordance with state and federal law, Defendants expect the employees to do their jobs.

According to Defendants, the MN Payroll Service is a multi-faceted payroll program that provides employees with access to their full wages.  When an employee first receives his or her pay via the MN Payroll Service, the employee is provided with a Welcome Packet, which includes instructions on how to use the service, three Money Network checks, and a Money Network pay card (referred to as the "ADP TotalPay Visa Card").  The instructions inform the employee that he or she can choose to use the checks, use the pay card, or electronically transfer funds to a personal bank account.  The instructions also explain how the employee can use the

1  service without incurring any fees.

2      The MN Payroll Service has certain charges that may be deducted from the employee's

3  account. For instance, employees are charged $.25 for a debit card transaction, $1.75 for a

4  withdrawal from an out-of-network ATM, or $6.00 for a replacement card. The type and

5  amount of fees charged class members have been consistent throughout the class period.

6  **B.    Procedural History Of The Case**

7      This matter was filed on October 25, 2013 in the Northern District of California and

8  assigned Magistrate Judge Jacqueline Scott Corley. (ECF 1.) Plaintiffs Jeffrey Lapan and

9  Ashwin Chandra filed this action against PVH Corp. alleging the following claims: (1) breach

10 of contract; (2) Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") violations;

11 (3) Labor Code violations; and (4) conversion. (*Id.*) Plaintiffs alleged a nationwide class and

12 nationwide collective action for the breach of contract and FLSA violations, respectively, and a

13 California class for Labor Code violations, Business & Professions § 17200 claims, and

14 conversion. (*Id.*)

15     On November 14, 2013, Plaintiffs filed a Notice of Pendency of Other Action or

16 Proceeding pursuant to Local Rule 3-13 and identified *Scott-George v. PVH Corp.*, E.D. Cal.

17 Case 2:13-cv-00441-TLN-DAD as a potentially related case. (ECF 7.) Plaintiffs attached a copy

18 of *Scott-George's* Third Amended Complaint to the notice. (ECF 7, Ex. 1.) Counsel suggested

19 that transfer pursuant to 28 U.S.C. 1407 would be appropriate. (*Id.*)

20     Also on November 14, 2013, Plaintiffs filed – in *Chavez v. PVH Corp.*, Case C 13-

21 01797 – an Administrative Motion to Consider Whether Cases Should Be Related per Local

22 Rule 3-12 and 7-11. The Administrative Motion identified the *Lapan* case as involving

23 substantially the same parties, property, transaction and events as the *Chavez* matter and

24 attached a copy of the *Lapan* complaint. (*Chavez*, ECF 39, 39-1.)

25     Additionally, on November 14, 2013, Plaintiffs filed a motion for an inter-district

26 transfer in order to transfer this matter to this Department due to the pendency of *Chavez v.

27 PVH Corp.*, Case C 13-01797 per 28 U.S.C. § 1404(b). (ECF 8.)

28     As a result of Defendant's filing a declination to proceed before Magistrate Judge

Corley, the matter was re-assigned to Judge Yvonne Gonzales Rogers on November 22, 2013. (ECF 18.) Accordingly, Plaintiffs re-noticed their motion for an inter-district transfer before Judge Rogers pursuant to the re-assignment order.  (ECF 19.)

On December 9, 2013, Plaintiffs filed an Amended Complaint to add additional factual allegations. (ECF 21.) On December 23, 2013, Defendant answered the Amended Complaint. (ECF 24.)

On January 8, 2014, this Court granted Plaintiffs' motion to relate and re-assigned the matter to this Department. (ECF 25.) Also on January 8, 2014, Plaintiffs' counsel herein appeared at the *Chavez* Case Management Conference and informed the Court of the existence of the *Lapan* action.

On March 25, 2014, the parties conducted their joint conference and Plaintiffs propounded written discovery on Defendant consisting of both interrogatories and requests for documents.  On April 7, 2014, the parties exchanged their initial disclosures.

On April 8, 2014, the parties filed their Joint Case Management Conference statement in preparation for the Case Management Conference on April 16, 2014. (ECF 30.) After the April 16, 2014 Case Management Conference, the Court subsequently issued its Case Management Conference Order setting dates for the completion of discovery, mediation, and trial. (ECF 33.)

Starting April 28, 2014, Defendant started responding to Plaintiffs' discovery requests with both written responses and document production.

Based on information contained in Defendant's discovery responses, Plaintiffs began to issue third-party subpoenas starting on May 15, 2014. Plaintiffs subpoenaed relevant records from ADP, Inc., Money Network Financial, LLC, Metabank, and First Data Trust Company, LLC.  Plaintiffs served a second subpoena on ADP in August 2014. Plaintiffs subsequently engaged in multiple meet and confer sessions with the third parties which eventually resulted in productions over the ensuing five months. The productions included, *inter alia*, the contracts between Defendant and the third parties, an analysis of the features and benefits of the MN Payroll Service, spreadsheets detailing the fees incurred by the named Plaintiffs for their use of the MN Payroll Service, and a spreadsheet detailing the amount of fees charged to Defendant's

1    employees on a nationwide basis for their use of the MN Payroll Service. The spreadsheet
2    detailed the amounts of fees incurred by month, by state, and by type.

3         On June 5, 2014, Plaintiffs filed an objection to the *Chavez* Motion for Preliminary
4    Approval. (*Chavez,* ECF 57.) Among other objections, Plaintiffs objected to the proposed
5    reversion to Defendant of unclaimed funds.  (*Id.*)

6         On June 11, 2014, Plaintiff filed a Motion to Amend the complaint to add additional
7    named defendants Tommy Hilfiger Retail, LLC and PVH Retail Stores LLC. Plaintiffs also
8    sought to add a cause of action under the Private Attorneys' General Act of 2004, Labor Code §
9    2699 *et seq.* (ECF 38.) On July 16, 2014, the Court granted Plaintiffs' Motion. (ECF 46.)
10   Accordingly, Plaintiffs filed their Second Amended Complaint on July 16, 2014. (ECF 47.)
11   Defendants filed an answer to the Second Amended Complaint on August 21, 2014. (ECF 64.)

12        On June 19, 2014, Plaintiffs' counsel appeared at the hearing for Preliminary Approval
13   of Class Action Settlement in *Chavez* and argued the objections including the proposed
14   reversion. On June 20, 2014, the Court denied *Chavez*'s Motion for Preliminary Approval.
15   (*Chavez,* ECF 63.) Chavez and Defendant subsequently amended their settlement to delete the
16   reversion and submitted it for approval which the Court ultimately granted on July 17, 2014.
17   (*Chavez,* ECF 73.)

18        On July 23, 2014, Defendant served document requests on Plaintiffs which Plaintiffs
19   responded to on August 25, 2014. On September 29, 2014, Defendant served interrogatories on
20   Plaintiffs which they responded to on November 13, 2014. Defendant served a second set of
21   document requests on October 3, 2014 which Plaintiffs responded to on October 31, 2014.

22        On August 1, 2014, the parties filed an updated Joint Case Management Conference
23   Statement. (ECF 59.) As a result, the Court ordered the parties to attend private mediation.
24   (ECF 61.) On September 19, 2014, the parties filed an updated Joint Case Management
25   Conference Statement detailing the discovery efforts the parties were engaging in. (ECF 65.)

26        On October 28, 2014, Plaintiff took Defendant's Fed.R.Civ.P. 30(b)(6) deposition on a
27   number of topics related to the Money Network Payroll Distribution Service. On October 29,
28   2014, Plaintiffs followed up the deposition with a second set of document requests.

On December 9, 2014, the parties engaged in a 12-hour, hard-fought private mediation with mediator Lisa Bertain of Keesal, Young and Logan which resulted in coming to terms on the fundamental aspects of the present settlement.  In anticipation of the mediation, the parties submitted detailed mediation briefs and examined relevant data and calculations. Subsequent to the mediation, the parties continued active negotiations on the details of the settlement that is before this Court.

After filing an updated Joint Case Management Conference Statement informing the Court of the settlement (ECF 71), the Court conducted a further Case Management Conference on January 7, 2015 and ordered a further conference. (ECF 74.)

On March 26, 2015, Plaintiffs filed a Third Amended Complaint adding named plaintiff Claudia Bleus and additional PVH Corp. related entities as defendants.  (ECF 84.)

### III.    SETTLEMENT TERMS

The details of the settlement are set forth in the Joint Stipulation of Class Action Settlement.  (Ex. 1, Decl. of Wynne.)  A summary of the terms is set forth below:

**A.    Settlement Fund**

In return for a release of claims pled in the Third Amended Complaint, Defendants shall pay, at a minimum, $725,000 into a non-reversionary settlement fund. This amount may increase depending on the actual amount of fees charged to Class Members through Preliminary Approval. After deductions for the Initial Payments defined as payments for attorney's fees and costs, class representative enhancement awards, and payment to the California Labor Workforce Development Agency (i.e., the Net Settlement Amount), if Participating Class Members make claims in excess of the Net Settlement Amount, Defendants will increase the Class Settlement Amount to reimburse those fees in their entirety.

Within three (3) business days after final approval, Defendants will transfer the settlement fund to the Settlement Administrator who will maintain the fund in an interest bearing account at a federally-insured banking institution with all interest inuring to the benefit of the Class and Class Counsel and with the proviso that if the final approval order is appealed, the monies will be returned to Defendants until after the conclusion of all appeals (assuming the

1    final approval is affirmed on appeal).

2    **B.    Class Definition**

3        Subject to Court approval, the parties have stipulated to certification for settlement

4    purposes only of the following classes:

5        **1.    Nationwide Settlement Class:** All current and former employees who worked

6    for Defendants in the U.S. and U.S. territories, other than California, from October 25, 2009,

7    through the date of preliminary approval and who were paid wages at any time via the Money

8    Network Payroll Distribution Service. It is estimated that there are approximately 62,057

9    individuals in the Nationwide Settlement Class as of January 2015.

10       **2.    FLSA Settlement Class:** All current and former non-exempt employees who

11   worked for Defendants in the U.S. and U.S. territories, other than California, from October 25,

12   2010, through the date of preliminary approval and who were paid wages at any time via the

13   Money Network Payroll Distribution Service.  It is estimated that there are approximately

14   55,737 individuals in the FLSA Settlement Class as of January 2015.  All of these individuals

15   are also members of the Nationwide Settlement Class. (Decl. of Wynne.)

16       **3.    California Class:**  This class consists of both (a) all current and former

17   employees who worked for Defendants in California from July 17, 2014, through the date of

18   preliminary approval by the Court and who were paid wages at any time after July 17, 2014, via

19   the Money Network Payroll Distribution Service, and (b) all current and former employees who

20   worked for Defendants in California from March 20, 2009, through the date of preliminary

21   approval, who were paid wages at any time via the Money Network Payroll Distribution

22   Service, and who affirmatively opted-out of the settlement in *Chavez v. PVH Corp., et al*., N.D.

23   Cal. Case No. 13-01797. Part of the California Class starts on July 17, 2014 because that is the

24   end of the class period in *Chavez v. PVH Corp., et al*., N.D. Cal. Case No. 13-01797.  It is

25   estimated that there are approximately 2,538 individuals in the California Class as of January

26   2015 and, of that amount, 874 are former employees. (Decl. of Wynne.)

27   **C.    Class Representatives and Class Counsel**

28       Subject to Court approval, the parties have stipulated that plaintiffs Jeffrey Lapan,

1  Ashwin Chandra, and Claudia Bleus be appointed class representatives.  Plaintiffs Lapan and

2  Chandra worked in California during the class period. Bleus worked in Florida during the class

3  period. All were paid through the MN Payroll Service and all incurred fees. Also subject to

4  Court approval, the parties have stipulated that Edward J. Wynne, Wynne Law Firm, be

5  appointed class counsel.

6  **D.      Notice Procedure.**

7          Subject to Court approval, the parties have agreed on Rust Consulting as the Claims

8  Administrator. After updating the database provided by Defendant through the National Change

9  of Address database, the Claims Administrator will mail a notice to each class member which

10  will identify and provide a brief description of the case, provide contact information of the

11  Claims Administrator and Class Counsel, as well as provide the URL of an interactive,

12  password protected website. The interactive website will allow class members to view and

13  download the Notice and Claim Form, request a hard copy of the Notice and Claim Form, and

14  complete and file a Claim Form online. The Claims Administrator will also have live telephone

15  support for any class member requests or inquiries.

16          The cost of the notice and claims procedure is estimated to be $100,000. Defendant is

17  paying this sum directly to the Claims Administrator, i.e., the costs of the notice and claims

18  procedure is not coming from the Settlement Fund.

19  **E.      Plan of Allocation.**

20          **1.      Net Settlement Fund:** After deductions for attorney's fees and costs, Class

21  Representative Enhancement Awards, and payment to the California Labor Workforce

22  Development Agency, the Net Settlement Fund will be distributed to all Participating Class

23  Members. Plaintiffs estimate the Net Settlement Fund to be approximately $517,500.

24          Payments to individual Class Members shall be calculated and apportioned from the Net

25  Settlement Amount based on the amount of fees paid by the Participating Class Member in

26  connection with their use of the MN Payroll Service.  The payment to each Participating Class

27  Member shall equal the fees paid by the Participating Class Member for use of the MN Payroll

28  Service.  But if the actual fees claimed by Participating Class Members total less than the

minimum Net Settlement Amount, the Individual Settlement Payments shall be increased proportionately to equal 100% of the Net Settlement Amount minimum. Conversely, if the actual fees claimed by Participating Class Members exceeds the Net Settlement Amount, Defendant shall deposit additional funds to pay all Participating Class Members the total amount of fees incurred for their use of the MN Payroll Service.

The settlement will be conducted on a claims-made basis rather than a claims-paid basis. Plaintiffs submit that a claims-made settlement rather than a claims-paid settlement is preferable in this case because a claims-paid settlement will result in checks being mailed for very modest amounts (due to the very modest amount of fees incurred relative to the size of the class). This would result in a substantial number of Class Members not negotiating their checks which defeats the entire purpose of the litigation and settlement. Because the settlement is non-reversionary, unclaimed funds will be redistributed to participating class members thereby increasing the settlement shares of those class members. Moreover, a claims-made settlement reduces fraud by ensuring that the settlement share is paid to the actual Class Member. (Decl. of Wynne.)

**2.       Attorney's Fees, Costs and Enhancements:** Pursuant to the parties' agreement, Plaintiffs' counsel will be asking the Court to award the Ninth Circuit bench-mark for attorney fees in class actions, i.e., 25% of the settlement fund or $181,250, plus costs not to exceed $15,000. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). In addition, plaintiffs Lapan, Chandra, and Bleus will be asking for $2,500 each as Class Representative Enhancements which is an amount that is half of what is considered presumptively reasonable in the Northern District. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390 at *7 (N.D. Cal. Nov. 21, 2012).

**3.       LWDA payment:** The parties have agreed that the value of the PAGA claim is $5,000. Accordingly, 75% or $3,750, will be paid to the LWDA per Labor Code § 2699(i) to settle this claim.

1    **IV.    THE STANDARDS FOR PRELIMINARY APPROVAL ARE SATISFIED.**

2    **A.    The Standard for Preliminary Approval**

3    The "universal standard" in evaluating the fairness of a settlement is whether the

4    settlement is "fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Service*

5    *Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]he court's intrusion upon what is otherwise a

6    private consensual agreement negotiated between the parties to a lawsuit must be limited to the

7    extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

8    overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as

9    a whole, is fair, reasonable and adequate to all concerned." *Id*.

10    As the Ninth Circuit has recognized, "the very essence of a settlement is compromise."

11    *Id*. at 624. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and

12    expensive litigation that induce consensual settlements. The proposed settlement is not to be

13    judged against a hypothetical or speculative measure of what might have been achieved by the

14    negotiators." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998), citing

15    *Officers for Justice,* 688 F.2d at 625. Even if the amount of a proposed monetary settlement is a

16    fraction of the potential recovery, that does not necessarily mean the settlement is inadequate.

17    *Linney,* 151 F.3d at 1242.

18    Court approval of a class action settlement is a two-step process. First, counsel submits

19    the proposed terms of the settlement to the court, and the court makes a preliminary fairness

20    evaluation. If the preliminary evaluation of the settlement does not disclose a basis to doubt its

21    fairness or other obvious deficiencies, the court directs that notice be given to the class and sets

22    a final fairness hearing. *Manual for Complex Litigation, Fourth*, § 21.632 (2004).

23    Preliminary approval should be granted if the proposed settlement falls "within the range

24    of possible final approval." *Gautreaux v. Pierce,* 690 F.2d at 616, 621 n.3 (7th Cir. 1982);

25    Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002), § 11.25 at pp. 38-39. Stated

26    another way, preliminary approval is "a determination that there is what might be termed

27    'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its

28    fairness." *In re Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir.

1  1980).

2         Furthermore, a proposed settlement is presumed to be fair when: (1) it is reached

3  through arm's-length negotiations; (2) the putative class is represented by experienced counsel;

4  and (3) the parties have conducted sufficient discovery. *Wal-Mart Stores, Inc. v. Visa U.S.A.*

5  *Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005).

6         Here, all of the factors giving rise to a presumption of fairness exist. The proposed

7  settlement was the product of arm's-length, non-collusive negotiations, overseen by a mediator

8  (Wynne Decl.); the class is represented by experienced counsel (*id.*); and the parties have

9  conducted sufficient discovery (*id.*). Thus, the settlement is presumed to be fair.

10        The Ninth Circuit has also suggested that district courts consider the following factors in

11  evaluating the fairness of a class action settlement: the strength of the plaintiff's case; the risk,

12  expense, complexity, and likely duration of further litigation; the risk of maintaining class

13  action status throughout the trial; the amount offered in settlement; the extent of discovery

14  completed and the stage of the proceedings; the experience and views of counsel; the presence

15  of a governmental participant; and the reaction of the class members to the proposed settlement.

16  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The relative degree of

17  importance to be attached to any particular factor depends upon the circumstances of each case.

18  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Here, the pertinent

19  factors weigh in favor of granting preliminary approval.

20  **B.      Strength of Plaintiffs' Case**

21        All of Plaintiffs' claims arise out of Defendants' use of the Money Network Payroll

22  Distribution Service. The technology and the use of it in this fashion to pay employees is a

23  relatively new development. The claims alleged herein are novel and, consequently, there is a

24  decided dearth of authority in this area. Indeed, it appears the only detailed discussion of these

25  payment systems related to the claims made herein is two Opinion Letters from the California

26  Labor Commissioner. See, O.L. 2008.07.07 and O.L. 2008.07.07-2. Both of the Opinion Letters

27  examined the use of payroll card programs and provided some basic guidance based on the

28  Labor Commissioner's analysis of Labor Code §§ 212 and 213. The Labor Commissioner found

1  that for a payroll card program to not violate the Labor Code, the program must be an

2  alternative payment method for the employee, and the employee must be able to use the card at

3  least once per pay period without incurring a fee. See, generally, O.L. 2008.07.07 and O.L.

4  2008.07.07-2. Of course, aside from the fact that the California Labor Commissioner's Opinion

5  Letters are not binding on this Court, the Labor Commissioner only examined the payroll

6  services in the context of the California Labor Code and certainly not under the FLSA or

7  Plaintiffs' common law claims for breach of contract or conversion. Notwithstanding, it is

8  worth noting that that one of the payroll card programs the Labor Commissioner examined was

9  the MN Payroll Service at issue herein which the Commissioner found to be in compliance with

10  California law. See, O.L. 2008.07.07-2.

11        Here, Defendants first contend that the MN Payroll Service is one alterative form of

12  payment because if employees have a bank account, then they can receive their wages through

13  direct deposit. Defendants also allege that employees who use the MN Payroll Service have

14  immediate access to all of their wages and can access their full wages without incurring any fees

15  by doing any of the following:  (1) using one or more of the Money Network checks; (2) using

16  the ADP TotalPay Visa Card as a credit card; (3) electronically transferring funds to a personal

17  bank account; (4) withdrawing funds from an in-network ATM (with a list of all in-network

18  ATMs provided on the Money Network website); and (5) using the card to access funds from a

19  bank teller. Thus, Defendants contend, the foundation to all of Plaintiffs' claims is missing and

20  all are based on the incorrect premise that the fees incurred are somehow illegal.

21        Defendants also contend that the materials they provide to all employees explicitly

22  explain the MN Payroll Service and all fees that may be incurred.  Employees are made aware

23  of the numerous ways to use the program without incurring fees through literature provided by

24  PVH, including a Welcome Packet and a "Frequently Asked Questions" List that are provided

25  to all employees.  Thus, after the employee's full wages are deposited, Defendants argue that

26  the employee makes a voluntary choice regarding how she wishes to receive her funds at all

27  times.

28        Specifically with respect to the breach of contract claims, Defendants argue this claim is

1    highly speculative and subject to significant hurdles both substantively and procedurally.

2    Defendants argue that there is no contract between Defendants and the Class because statements

3    made in an employee handbook do not constitute a contract. Indeed, even the handbook itself

4    specifically disavows the creation of a contract.  Defendants also contend that no oral contracts

5    were made with employees and even if they were, no class could be certified based on alleged

6    oral contracts.

7        As for the FLSA claims, Defendants contend that the MN Payroll Service pays the

8    employees free and clear and without reduction. 29 CFR § 531.35; see also, *Takacs v. A.G.*

9    *Edwards and Sons, Inc.,* 444 F.Supp.2d 1100 (S.D. Cal. 2006) [discussing "free and clear

10   payment"]. Moreover, Defendants contend that even if the MN Payroll Service does not "finally

11   and unconditionally" pay the wages due, the instances where such non-payment would result in

12   minimum wage and/or overtime violations is *de minimus* because nearly all employees made

13   more than the federal minimum wage. Further, Defendants will contend that because Plaintiffs

14   will not be able to show that Defendants' conduct was knowingly in violation of the law or in

15   reckless disregard of the law (see, *McLaughlin v. Richland Shoe Co.,* 486 US 128, 131–135,

16   (1988)), Plaintiffs will not be entitled to a third year of damages per 29 U.S.C. 255(a) even if

17   they were to overcome the other challenges to state a claim.  Moreover, Defendants believe that

18   even if Plaintiffs show an FLSA violation, Defendants could overcome the presumption of

19   liquidated damages because they had a "good faith" belief and objectively "reasonable grounds"

20   for believing their conduct was lawful. *See Chao v. A-One Medical Servs., Inc.,* 346 F.3d 908,

21   920 (9th Cir. 2003) (noting defendants' case would have been different with "some objective

22   authority" that their wage-payment practices were legal). *See also, e.g,, Flores v. City of San*

23   *Gabriel*, No. CV 12-04884-JGB, 2013 WL 5817507 at *3-4 (C.D. Cal. Oct. 29, 2013) (finding

24   no double damages where there was no binding case law on pay practice used by employer and

25   the employer took steps to ensure proper payment); *Ulin v. ALAEA-72, Inc.,* No. C-09-3160-

26   EDL, 2011 WL 723617 at * 15 (N.D. Cal. Feb. 23, 2011) (finding no liquidated damages where

27   defendant was generally aware of FLSA requirements and believed he was complying).

28       With respect to the California claims, Defendants argue that the MN Payroll Service did

not deny Class Members full access to their wages. Accordingly, there is no violation of Plaintiffs' core claims under Labor Code §§ 212, 216, 221 and 224 for failure to pay wages due and owing. Therefore, Defendants contend that Plaintiffs' derivative claims under Labor Code § 203 (waiting time penalties), § 226 (wage statements), § 510 (overtime), § 1182.11, 1182.12, 1194 (minimum wages), § 2802 (unlawful deductions), and § 2699 (PAGA penalties) likewise fail. Similarly, Defendants contend that Plaintiffs' other derivative claims under Bus. & Prof. Code § 17200 and conversion do not succeed for the same reasons.

While Plaintiffs are confident in their claims, they recognize that they are novel and untested and would face significant hurdles at both certification and trial. However, Plaintiffs note that novelty cuts both ways. As such, Plaintiffs submit that a settlement at this juncture is in the best interests of the class.

**C.     The Risk, Expense, Complexity, And Likely Duration Of Further Litigation**

To assess the fairness, adequacy and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation. *In re General Motors Corp.,* 55 F.3d 768, 806 (3rd Cir.1995) ["The present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."]; *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 616-17 (N.D. Cal.1979).

This factor supports preliminary approval here. This Counsel's experience in *Duran v. U.S. Bank N.A.*, 59 Cal.4th 1 (2014) perhaps best exemplifies the risk, expense, complexity and duration of further litigation. Counsel herein was successful in obtaining certification for that case and subsequently prevailed at trial after eight (8) years of litigation only to have the entire judgment and certification ultimately reversed by the California Supreme Court after an additional five (5) years of litigation. (Decl. of Wynne.) The case is now back in the Superior Court to begin the process again. (Decl. of Wynne.) As this case presents a novel theory based on facts that have been not been tested in the courts – unlike *Duran* – the risk in continued litigation is extremely high. Thus, it is Counsel's informed opinion that benefits of this settlement outweigh the risk and that settlement at this juncture is in the best interests of the

1    Class.

2    **D.    The Amount Offered In Settlement.**

3         This non-reversionary, at a minimum, $725,000 settlement presents a significant

4    recovery.

5         **1.    FLSA Claims:**  Based on data and information provided by First Data, the FLSA

6    Settlement Class incurred $864,863 in MN Service Fees from the period of October 2010 to

7    December 2014. Based on the ratio of California fees compared to the rest of the nation,

8    Plaintiffs estimate that of the $864,863, approximately $745,684 was incurred by all of

9    Defendant's employees nationwide except for those in California. With opt-in rates typically at

10   15% on average, Defendant's exposure for this claim is approximately $111,850. (Decl. of

11   Wynne.)

12        With respect to the minimum wage component of the FLSA claim, Plaintiffs estimate

13   that Defendants' exposure to be approximately $300,000 based on the number of class members

14   who earned at or close of the federal minimum wage of $7.25 per hour and the amount of fees

15   incurred on average per employee. Again, due to the opt-in mechanism of the FLSA,

16   Defendants' exposure for this part of the FLSA claim is estimated to be approximately $45,000.

17   (Decl. of Wynne.)

18        The overtime component of the FLSA claim was given no value because of the highly

19   speculative nature of the claim, the practical challenges in calculating the damages, if any, and

20   the fact that only 1.62% of all hours worked by Class Members during the Class Period were

21   overtime hours. (Decl. of Wynne.)

22        **2.    Breach of Contract:**  This claim covers all current and former employees who

23   worked for Defendants in the U.S. and U.S. territories, other than California, from October 25,

24   2009 to preliminary approval. Based on the data and information provided by First Data, the

25   Nationwide Settlement Class incurred $891,937 in MN Payroll Service fees.  However for the

26   one year period between October 2009 and September 2010 that is not covered by the FLSA

27   Nationwide Class, the data shows that $27,074 in MN Payroll Service Fees were incurred by

28   Defendants' employees.  (Decl. of Wynne.)

3.     **California Claims:**  The California Class includes Defendants' employees in California from July 2014 through preliminary approval. First Data has reported that from July 2014 to December 2014, $19,279 in MN Payroll Service fees were incurred by Defendants' California employees.  (Decl. of Wynne.)

The total potential value of the Labor Code § 203 claims is approximately $1,678,080 based on 874 former employees in the California Class. As recovery under § 203 requires a finding of "willfulness," Plaintiffs ascribed a 10% value to this claim or approximately $167,000. See, *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157 (2008) [in wage and hour class action, lack of willfulness found where defendant had a good faith defense to a newly enacted law that was uncertain]. (Decl. of Wynne.)

The total value of the Labor Code § 226 claims is approximately $8,000,000 based on an assumed 2,000 California Class Members at the time of mediation. However, because these amounts are entirely dependent on the merits of the underlying claim, Plaintiffs ascribed a value of 10% or $800,000.   (Decl. of Wynne.)

A summary of the various claims and their value is set forth below:

| Claim | Value |
|---|---|
| FLSA claim for fees | $111,850 |
| FLSA minimum wage | $300,000 |
| FLSA overtime | $0 |
| Breach of contract | $27,000 |
| Calif. Labor Code, B&P 17200, breach of contract and conversion | $19,250 |
| Labor Code § 203 | $167,000 |
| Labor Code § 226 | $800,000 |
| **Total** | **$1,425,100** |

Plaintiffs submit that the settlement of $725,000, at a minimum, is a settlement which represents approximately 50% of the approximate $1.4 value of the claims is substantial. Arguably, the minimum settlement value is $825,000 due to Plaintiffs being able to negotiate having Defendant pay for the entire cost of notice outside of the settlement. Because all Participating Class Members are getting back all of the money they were changed through the MN Payroll Service, the realized value of this settlement is actually 100% of the claim.  Indeed,

1   in the event the Participating Class Members' claims do not exceed the Net Settlement Amount,

2   then all of those Class Members will be receiving more than 100% of the money they were

3   charged because the entire Net Settlement Amount will be distributed to Participating Class

4   Members. Therefore, Plaintiffs submit the settlement is significant and in the best interests of

5   the class. (Decl. of Wynne.)

6   **E.      Extent of Discovery Completed**

7           Plaintiffs obtained discovery on all of Defendants' policies and procedures related to the

8   MN Payroll Service including the contracts with Defendants' vendors and the communications

9   to the Class both generally related to compensation and specifically related to the MN Payroll

10  Service.  Plaintiffs obtained discovery through Defendant's interrogatory responses. Plaintiffs

11  also obtained discovery from Defendants' vendors, i.e., ADP and First Data, about their

12  contracts between the various vendors, an analysis of MN Payroll Service as compared to other

13  payroll services, a detail of the charges incurred by the named plaintiffs, and a detail of the

14  charges incurred by all Class Members nationwide. Plaintiffs took the deposition of Defendants'

15  corporate representative on issues related to the MN Payroll Service. Plaintiffs also received

16  informal discovery from Defendants both prior to and during the course of the mediation which

17  allowed Plaintiffs to refine their calculations and estimates. Based on the evidence and

18  Counsel's experience, Plaintiffs were able to make an informed decision that settlement was in

19  the best interests of the Class. (Decl. of Wynne.)

20  **F.      Experience and View of Counsel.**

21          Courts do not substitute their judgment for that of the proponents, particularly when

22  settlement has been reached by experienced counsel familiar with the litigation. *Hammon v.*

23  *Barry*, 752 F. Supp. 1087 (DDC 1990); *Steinberg v. Carey*, 470 F. Supp. 471 (NY 1979); *In re*

24  *Armored Car Anti - Trust Litigation*, 472 F. Supp. 1357 (ND GA 1979); *Sommers v. Abraham*

25  *Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (ED PA 1978).

26          While the recommendations of counsel proposing the settlement are not conclusive, the

27  court can properly take them into account, particularly if they have been involved in litigation

28  for some period of time, appear to be competent, have experience with this type of litigation,

1   and significant discovery has been completed. See, *Newberg*, §11.47. In this case, Plaintiffs and

2   the Class are represented by competent and experienced counsel. (Decl. of Wynne.) Plaintiffs'

3   counsel recommends the proposed settlement as fair, adequate and reasonable to the class

4   members and in their best interests.  (Decl. of Wynne.)

5   **V.      THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES**

6   **A.      The Nationwide and California Classes Meet the Requirements of Rule 23(a).**

7           The Nationwide breach of contract class and the California Classes meet the

8   requirements for certification under Fed.R.Civ.P. 23. A court should certify a class if the

9   following prerequisites are met: "(1) the class is too numerous, making joinder of the parties

10  impracticable; (2) common questions of law or fact exist among the class members; (3) the

11  claims of the class representatives are typical of the claims of the class; and (4) the class

12  representatives will adequately represent the interest of the class." *Walters v. Reno*, 145 F.3d

13  1032, 1045 (9th Cir. 1998). Each of these requirements is met in this case.

14          **1.      Numerosity**

15          Fed.R.Civ.P.23(a)(1) requires that the class be "so numerous that joinder of all members

16  is impracticable." In *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001), the court

17  observed that if a class exceeds 40 members, the numerosity requirement is satisfied. Here, the

18  Nationwide breach of contract class exceeds 60,000 and the California Classes exceed 2,500.

19  Thus, numerosity is satisfied.

20          **2.      Commonality**

21          The commonality requirement serves two purposes: (1) ensuring that absentee members

22  are fairly and adequately represented; and (2) ensuring practical and efficient case management.

23  *Walters*, 145 F.3d at 1045, citing *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982).

24  The standard under Rule 23(a)(2) is "permissive." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

25  1019 (9th Cir. 1998). In this case, all Class Members were injured by Defendants' use of the

26  MN Payroll Service which caused them to incur fees in order to access their own wages. Thus,

27  commonality is satisfied.

28

### 3. Typicality

A class representative's claims are typical if they are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel. Co. of Southwest*, 457 U.S. at 157 n.13.

Here, plaintiffs' claims are typical. All of the Plaintiffs were employed by Defendants, all were enrolled in the MN Payroll Service, and all incurred fees as a result of their use of the MN Payroll Service. (Decl. of Wynne.) Typicality is therefore satisfied.

### 4. Adequacy

"[T]wo criteria for determining the adequacy of representation have been recognized. First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

The adequacy requirement is met here. Plaintiffs have no interests that are antagonistic to those of the other class members and all incurred fees as a result of their employment with Defendants. Furthermore, Plaintiffs have retained counsel who is experienced in wage and hour class actions. (Decl. of Wynne)

## B. The Nationwide and California Classes Meet the Requirements of Rule 23(b)(3)

To certify a class under Fed. R. Civ. P. 23(b)(3), the Court must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The predominance inquiry tests whether proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When common questions present a

significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986).

Here, plaintiffs contend that there are numerous common factual and legal issues, which predominate over individual issues. These include: (1) whether the MN Payroll Program is an alternative payment method that provides full access to all of the employee's wages; (2) whether the MN Payroll Service pays the employees free and clear and without reduction; (3) whether Defendant had a contract with its employees, and if so, whether the contract was breached; (4) whether the MN Payroll Service caused Defendants' employees to be paid less than the minimum wage and/or overtime premium; (5) whether the MN Payroll Service caused Defendants' employees not to be paid all of their wages at time of termination and, if so, whether such failure was willful, (6) whether the MN Payroll Service caused Defendants' employees to not received correct wage statements; (7) whether Defendants' use of the MN Payroll Service was an unfair business practice; and, (8) whether the MN Payroll Service caused Defendants' employees to have their wages converted.  These common questions are sufficient to support certification under Rule 23(b)(3).

With respect to the Nationwide breach of contract claim, Plaintiffs submit that it meets the standard for certification because the first question is whether there was a contract in existence at all. The answer to that question is equally applicable to all Class Members and certainly if the answer is in the negative, it would "drive the resolution of the litigation."  *Wal-Mart Stores v. Dukes*, 564 U.S. ___, 131 S.Ct. 2541, 2551 (2011). Indeed, while Plaintiffs submit that the preliminary question of whether there is a contract at all is sufficient for certification of the claim – especially in the context of a settlement – court have found interpretation of contracts suitable for class treatment on a nationwide basis. *Wu v. Pearson Educ. Inc.,* 277 F.R.D. 255, 265 (S.D.N.Y.2011); *Jimenez v. AllState Indem. Co.,* No. 07–14494, 2010 U.S. Dist. LEXIS 95993, at *16, 2010 WL 3623176 (E.D.Mich. Sept. 15, 2010). Because Plaintiffs' claims are based on common law claims of each state, there are no choice-

1    of-law provisions to analyze. Cf, *Washington Mutual v. Superior Court*, 24 Cal.4th 906 (2001)

2    [certification reversed; choice-of-law provisions in written contract must be analyzed prior to

3    certification]. Similarly, because Plaintiffs are not seeking to certify California statutory claims

4    on a nationwide basis, the three-step governmental interest test as discussed in *Mazza v.*

5    *American Honda Motor Co., Inc.*, 666 F.3d 581, 590 (9th Cir. 2012) is inapplicable.  In *Mazza*,

6    the Court held that the trial court abused its discretion by certifying a nationwide class based on

7    alleged violations of California consumer protection laws, because there were material

8    differences between California laws and the laws of other states where class members purchased

9    their vehicles. *Id*. at 589, 591. The *Mazza* holding was expressly confined to the "facts and

10   circumstances" of the case. *Id.* at 594. It does not preclude a nationwide class based on state law

11   claims under other facts and circumstances. *See Forcellati v. Hyland's, Inc.,* 876 F. Supp. 2d

12   1155, 1159 (C.D. Cal. 2012). In this case, unlike *Mazza*, there is no material difference in the

13   state law from jurisdiction to jurisdiction. Common law breach of contract is the same from

14   state to state.

15       The superiority prong under Rule 23(b)(3) involves a comparison of the potential

16   alternative mechanisms for resolving the dispute. *Hanlon*, 150 F.3d at 1023 (citation omitted).

17   In this case, the only alternative to a class action would be thousands of individual actions for

18   miniscule amounts of money. As a practical matter, if this case is not certified, none of the

19   wages will ever be recouped. Accordingly, a class action is superior.

20   **C.    The Nationwide FLSA Class Meets the Standard for Conditional Certification.**

21       The FLSA's "collective action" provision allows one or more employees to bring an

22   action for overtime compensation "on behalf of himself, themselves, and other employees

23   similarly situated." 29 U.S.C. § 216 (b).

24       "Courts have held that conditional certification requires only that 'plaintiffs make

25   substantial allegations that the putative class members were subject to a single illegal policy,

26   plan or decision.'" *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp. 2d

27   1053, 1071  (N.D. Cal. 2007). "Under this lenient standard, 'the plaintiffs must "show that there

28   is some factual basis beyond the mere averments in their complaint for the class allegations."'"

1    *Id.* "Because the court generally has a limited amount of evidence before it, the initial

2    determination is usually made under a fairly lenient standard and typically results in conditional

3    certification." *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 467 (N.D.Cal.2004).

4    Plaintiff can meet this burden by making a modest factual showing sufficient to demonstrate

5    that he and potential plaintiffs together were victims of a common policy or plan that violated

6    the law. *Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 431 (S.D.N.Y.1995).

7            Here, the standard for certification under the FLSA is satisfied because Plaintiffs and the

8    other members of the Nationwide FLSA class were all employees of Defendants, were all

9    enrolled in the MN Payroll Service, were all subject to the identical terms and conditions, and

10   all incurred fees as a result of their use of the Service.  As such, the FLSA class members are

11   "similarly situated" and certification of the FLSA Nationwide class is appropriate.

12   **VI.     THE PROPOSED CLASS NOTICE IS THE BEST NOTICE PRACTICABLE**
                          **UNDER THE CIRCUMSTANCES**

13

14           Pursuant to Fed.R.Civ.P. 23 (e)(1), "[t]he court must direct notice in a reasonable

15   manner to all class members who would be bound by the proposal." Pursuant to Fed.R.Civ.P.

16   23(c)(2)(B), "[t]he notice must clearly and concisely state in plain, easily understood language:

17   (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues,

18   or defenses; (iv) that a class member may enter an appearance through an attorney if the

19   member so desires; (v) that the court will exclude from the class any member who requests

20   exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a

21   class judgment on members under Rule 23(c)(3)." Notice is satisfactory if it "generally

22   describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

23   investigate and come forward and be heard." *Churchill Village, LLC v. General Electric*, 361

24   F.3d 566, 575 (9th Cir. 2004).

25           Here, Defendants' did not gather or keep email addresses so electronic notification is not

26   possible. Additionally, because the Class size is considerable, mailing and processing over

27   60,000 claims in a traditional manner would drive the cost of administration to the point where

28   Defendant would not agree to pay for it.

1   Therefore, the parties have settled on a process that it most likely to assure each Class

2   Member gets notice and the claims process can be manageable and relatively efficient.

3   Specifically, the parties have agreed, subject to Court approval, to have the Claims

4   Administrator mail a summary notice via first class mail, postage prepaid, to the last-known

5   addresses of the class members as updated through the U.S. Postal Service's NCOA database.

6   (Joint Stipulation, Exhibit 5) This method meets the requirements of due process. *Overton v.*

7   *Hat World, Inc.*, 2012 U.S. Dist. LEXIS 144116 at *5 (E.D. Cal. 2012) [noting that individual

8   notice to class members' last known address met the requirements of due process]. Class

9   members will then go to the interactive, password-protected website to download the Class

10   Notice (Joint Stipulation, Exhibits 3 and 4) which describes in plain language the litigation, the

11   terms of the settlement, and the class members' options with regard to the settlement. In the

12   website, Class Members will be able to make a claim, request the Class Notice and Claim Form

13   be mailed to them (Joint Stipulation, Exhibits 1 and 2), and obtain contact information in order

14   to have any questions answered. Accordingly, the proposed notice plan complies with Rule 23

15   and due process.

16   **VII.   CONCLUSION**

17   In light of the forgoing, Plaintiffs respectfully request that the Court grant the motion for

18   preliminary approval of the class action settlement and certify the proposed classes.

19

20   Dated:  March 30, 2015                    WYNNE LAW FIRM

21                                             /s/ *Edward J. Wynne*

22                                             Edward J. Wynne
                                               Attorneys for Plaintiffs

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLMENT;
PLAINTIFFS' MEMORANDUM IN SUPPORT THEREOF
13-cv-05006-LHK