1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WYNNE LAW FIRM**
Edward J. Wynne      (SBN 165819)
ewynne@wynnelawfirm.com
100 Drakes Landing Road Ste. 275
Greenbrae, CA 94904
Telephone: (415) 461-6400
Facsimile:  (415) 461-3900

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

JEFFREY LAPAN, ASHWIN CHANDRA, CLAUDIA BLEUS, on behalf of themselves and all others similarly situated,

                    Plaintiffs,

              v.

PVH CORP., TOMMY HILFIGER RETAIL, LLC, PVH RETAIL STORES, LLC, PVH WHOLESALE NEW JERSEY INC., PVH NECKWEAR INC., PVH WHOLESALE CORP., PVH PUERTO RICO, INC., CALVIN KLEIN, INC., TOMMY HILFIGER USA, INC., PVH GUAM, INC., WARNACO, INC., WARNACO U.S., INC., WARNACO GROUP, INC., AND WARNACO SWIMWEAR PRODUCTS, INC.

                    Defendants.

**Case No.  13-cv-05006-LHK**


**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**




Date:  January 21, 2016
Time: 1:30 p.m.
Judge: Lucy H. Koh
Ctrm. 8

TO THE COURT AND ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on January 21, 2016 at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of Hon. Lucy H. Koh, United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, in Courtroom 8, Jeffrey Lapan, Ashwin Chandra, and Claudia Bleus ("Plaintiffs") will and hereby do respectfully move the court for final approval of the proposed class action settlement.

This Motion is based upon this Notice of Motion and Motion for Final Approval of Class Action Settlement, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Edward J. Wynne, the Declaration of Jeffrey Lapan, the Declaration of Ashwin Chandra, the Declaration of Claudia Bleus, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.


Dated:  December 17, 2015                         WYNNE LAW FIRM


                                                  /s/ *Edward J. Wynne*
                                                  Edward J. Wynne
                                                  Attorneys for Plaintiffs

1

## Table of Contents

2   I.      INTRODUCTION. ................................................................................................. 1

3   II.     ALLEGATIONS OF THE COMPLAINT AND PROCEDURAL HISTORY. ................. 2

4           A.      Allegations of the Complaint. ............................................................... 2

5           B.      Procedural History of The Case ............................................................ 3

            C.      The *Scott-George* Case Has No Impact on This Action. ......................... 6

6   III.    DESCRIPTION OF THE SETTLEMENT. ............................................................. 7

7           A.      Settlement Fund ................................................................................... 7

8           B.      Class Definition ................................................................................... 7

9                   1.      Nationwide Settlement Class ..................................................... 7

10                  2.      FLSA Settlement Class ............................................................. 8

11                  3.      California Class ......................................................................... 8

            C.      Class Representatives and Class Counsel ............................................. 8

12          D.      Plan of Allocation. .............................................................................. 8

13                  1.      Net Settlement Fund ................................................................. 8

14                  2.      Attorney's Fees, Costs and Enhancements ................................. 9

15                  3.      LWDA payment ........................................................................ 9

16  IV.     STATUS OF THE CLAIMS PROCESS. ................................................................ 9

17  V.      FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE. ............................ 11

18          A.      The Settlement is Entitled to a Presumption of Fairness ..................... 12

19                  1.      The Settlement was Reached Through Arm's Length Negotiations ....... 12

20                  2.      Substantial Investigation has Been Completed to Warrant Settlement ... 13

21                  3.      Class Counsel is Experienced and Endorses the Settlement .................... 13

                    4.      The Percentage of Objections is Zero ........................................ 13

22          B.      The Risk and Expense of Further Litigation ........................................ 14

23          C.      The Novelty and Complexity of This Litigation ................................... 15

24          D.      The Amount Offered in Settlement ..................................................... 15

    VI.     THE REQUESTED INCENTIVE AWARDS SHOULD BE APPROVED. .................. 15

25  VII.    CLASS COUNSEL'S ATTORNEY'S FEES AND LITIGATION EXPENSES

26          SHOULD BE APPROVED. ................................................................................. 17

27          A.      Class Counsel's Fee ........................................................................... 17

28                  1.      The Result Achieved ............................................................... 19

i

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLMENT; PLAINTIFFS'
MEMORANDUM IN SUPPORT THEREOF
13-cv-05006-LHK

2. The Risk Involved in the Litigation .......................................................... 19

3. The Skill Required and Quality of Work by Counsel ............................. 21

4. The Contingent Nature of the Fee .......................................................... 22

5. Awards Made in Similar Cases ................................................................ 23

6. No Objection from the Class and Support for the Representative Plaintiffs .................................................................................................... 23

7. The Lodestar Method Supports Class Counsel's Fee Request ............... 23

B. Class Counsel's Litigation Expenses ................................................................. 24

VII. CONCLUSION ..................................................................................................... 25

1

## Table of Authorities

2

**Federal Cases**

3

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................ 13

4

*Chao v. A-One Medical Servs., Inc.*,
5   346 F.3d 908 (9th Cir. 2003) ................................................................................. 21

6

*Ching v. Siemens Industry, Inc.*
   (N.D. Cal., June 27, 2014, 11-CV-04838-MEJ) 2014 WL 2926210 ...................... 17, 18, 19, 23

7

*Churchill Village, L.L.C. v. General Electric*
8   (9th Cir. 2004) 361 F.3d 566 ................................................................................... 6

9

*Covillo v. Specialty's Café*,
   2014 WL 954516 (N.D. Cal. March 6, 2014) ......................................................... 24

10

*Ellis v. Naval Air Rework Facility*,
11   87 F.R.D. 15 (N. D Cal. 1980) affd, 661 F. 2d 93 9 (9th Cir. 1981) ...................... 13

12

*Fisher Bros. v. Cambridge-Lee Industries, Inc.*,
   630 F. Supp. 482 (E.D. Pa. 1985) ........................................................................... 13

13

*Flores v. City of San Gabriel*,
14   No. CV 12-04884-JGB, 2013 WL 5817507 (C.D. Cal. Oct. 29, 2013) .................... 21

15

*Glass v. UVS Fin. Serv., Inc.*,
   2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ........................................................... 23

16

*Greko v. Diesel, U.S.A., Inc.*,
17   2013 WL 1789602 (N.D. Cal. April 26, 2013) ....................................................... 18

18

*Gribble v. Cool Transports, Inc.*,
   2008 WL 5281665 (C.D. Cal. 2008) ...................................................................... 16, 18

19

*Hanlon v. Chrysler Corp.*,
20   150 F.3d 1011 ........................................................................................................... 9

21

*In Re Activision Sec. Litig.*,
   723 F. Supp. 1373 (ND. Cal. 1989) ........................................................................ 23

22

*In re Mercury Interactive Corp.*,
23   618 F.3d 988 (9th Cir. 2010) ................................................................................. 16, 18

24

*In Re Pacific Enterprises Sec. Litig.*,
   47 F.3d 373, 379 (9th Cir. 1995) ............................................................................ 23

25

*In Re Rite Aid Corp. Sec. Litig.*,
26   396 F.3d 294 (3d Cir. 2005) .................................................................................... 24

27

*In re Warner Communications Sec. Litig.*,
   618 F. Supp. 735, 741 (S.D.N.Y. 1985) affd, 798 F.2d 35 (2d Cir. 1986) .............. 13

28

*In re Wells Fargo Loan Processor Overtime Pay Litigation*
  (N.D. Cal., Aug. 2, 2011, MDL C-07-1841 EMC) 2011 WL 3352460 .............................. 16, 23

*In Re: Washington Public Power Supply System Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ............................................................................................. 22

*Joes v. GN Netcom, Inc.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................................................. 16

*Linney v. Cellular Alaska P'ship*,
  1997 WL 450064 (N.D. Cal. 1997) ...................................................................................... 23

*Lo Re v. Chase Manhattan Corp.*,
  1979 WL 236(S.D.N.Y. May 25, 1979) ................................................................................. 17

*McLaughlin v. Richland Shoe Co.*,
  486 US 128 (1988).............................................................................................................. 20

*Officers for Justice v. Civil Service Com.*,
  688 F.2d 615 (9th Cir. 1982) cert. denied 459 U.S. 1217 .............................................. 12, 14

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) ............................................................................................. 18

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................................................... 15

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir.2003) ................................................................................................ 18

*Stuart v. Radioshack Corp.*,
  No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) .................................. 18, 23

*Takacs v. A.G. Edwards and Sons, Inc.*,
  444 F.Supp.2d 1100 (S.D. Cal. 2006)................................................................................... 20

*Ulin v. ALAEA-72, Inc.*,
  No. C-09-3160-EDL, 2011 WL 723617 (N.D. Cal. Feb. 23, 2011) ........................................ 21

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482 (E.D. Cal. 2010) ......................................................................................... 23

*Villegas v. J.P. Morgan Chase & Co.*,
  No. CV 09-00261 SBA EMC, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ......................... 9

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................................................... 16, 18, 23

*Wineland, et al. v. Casey's General Stores, et. al.*,
  267 F.R.D. 669 (S.D. Iowa 2009)......................................................................................... 15

**State Cases**

*Dunk v. Ford Motor Company*,
   48 Cal. App. 4th 1794 (1996) ............................................................................ 12, 14

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th at 250 (2001) ................................................................................ 12


**Statutes, Rules & Regulations**

29 Code of Federal Regulations
   § 531.35 ................................................................................................................... 20

29 United States Code
   255(a) ...................................................................................................................... 20

California Business & Professions Code
   § 17200 ................................................................................................................. 3, 21

California Code of Civil Procedures
   § 1781(f) .................................................................................................................. 11

California Labor Code
   § 1182.11 ................................................................................................................. 21

California Labor Code
   § 1182.12 ................................................................................................................. 21

California Labor Code
   § 1194 ..................................................................................................................... 21

California Labor Code
   § 203 ....................................................................................................................... 21

California Labor Code
   § 212 ................................................................................................................... 19, 21

California Labor Code
   § 213 ....................................................................................................................... 19

California Labor Code
   § 216 ....................................................................................................................... 21

California Labor Code
   § 221 ....................................................................................................................... 21

California Labor Code
   § 224 ....................................................................................................................... 21

California Labor Code
   § 226 ....................................................................................................................... 21

California Labor Code
   § 2699 ................................................................................................................. 5, 9, 21

v

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLMENT; PLAINTIFFS'
MEMORANDUM IN SUPPORT THEREOF
13-cv-05006-LHK

California Labor Code
     § 2802 ............................................................................................................... 21

California Labor Code
     § 510 ................................................................................................................. 21

Federal Rules of Civil Procedures
     23(e) ................................................................................................................. 11

Federal Rules of Civil Procedures
     23(h) ................................................................................................................. 17


**<u>Other Authorities</u>**

California Labor Commissioner Opinion Letter
     2008.07.07 ........................................................................................................ 19

California Labor Commissioner Opinion Letter
     2008.07.07-2 ..................................................................................................... 19

Comes Plaintiffs Jeffrey Lapan, Ashwin Chandra, and Claudia Bleus ("Plaintiffs"), individually and as Class Representatives and respectfully submits this Memorandum of Points and Authorities in support of Plaintiffs' Unopposed Motion for Final Approval of Class Settlement.

## I.      INTRODUCTION.

The settlement reached by Plaintiffs and Defendants PVH Corp., Tommy Hilfiger Retail, LLC, PVH Retail Stores, LLC, PVH Wholesale New Jersey Inc., PVH Neckwear Inc., PVH Wholesale Corp., PVH Puerto Rico, Inc., Calvin Klein, Inc., Tommy Hilfiger USA, Inc., PVH Guam, Inc., Warnaco, Inc., Warnaco U.S., Inc., and Warnaco Swimwear Products, Inc. (collectively, "Defendants") and embodied in a Joint Stipulation of Settlement and Release (the "Joint Stipulation"), was preliminarily approved on August 7, 2015, when the Court entered its Order Preliminarily Approving Class Action Settlement (the "Preliminary Approval Order").  In the Preliminary Approval Order, the Court preliminarily found that the Settlement was "fair, reasonable and adequate in light of the facts and law presented in these cases."  Preliminary Approval Order at ¶2.   Plaintiffs now request that the Court grant final approval of the Settlement; enter the attached Order Granting Final Approval of Class Action Settlement and allow the Claims Administrator to disburse the Settlement proceeds.

The Preliminary Approval Order appointed Rust Consulting ("Rust") as the Claims Administrator and approved the Summary Class Notice, the Class Notices ("Notices") and the Claim Forms ("Claim Forms").  The Preliminary Approval Order at ¶¶ 4, 5.  Plaintiffs hereby report that the Summary Notice was mailed by the Claims Administrator to all 63,819 members of the certified Classes and an interactive, password-protected website made available for the Class Notices and the Claim Forms. The parties agreed to mail a supplemental postcard to all class members who had not submitted claims as of November 20, 2015. As of this writing 5,237 completed Claims Forms have been received. The parties agreed to extend the deadline for class members to submit claims up through January 6, 2016 so this number may increase.

Further, of the potential 63,819 identified Class Members, only 8 Class Members elected to opt out of the Settlement and not a single objection to the Settlement remains.

1   Plaintiffs respectfully submit that the favorable reaction of Class Members to the

2   Settlement supports a finding that the settlement is fair, reasonable and adequate.  As discussed

3   more fully below, the proposed Settlement provides substantial economic benefits relative to the

4   claims alleged and is in the best interests of the Class. Plaintiffs request that the Court should

5   grant final approval to the Settlement and authorize the parties to proceed with payment to the

6   Class Members.

7   **II.     ALLEGATIONS OF THE COMPLAINT AND PROCEDURAL HISTORY.**

8   **A.     Allegations of the Complaint.**

9   Plaintiffs' claims arise out of Defendants' use of the Money Network Payroll

10  Distribution Service which Defendants use to pay their employees. Defendants use the Money

11  Network Payroll Distribution Service ("MN Payroll Service") to pay their employees. The MN

12  Payroll Service is run through PVH Corp.'s payroll vendor ADP, Inc. and is managed by

13  Money Network Financial, LLC, a subsidiary of First Data Trust Company, LLC.

14  All of the PVH Corp. family of companies utilize the MN Payroll Service and make it

15  available to all of their employees at all levels. Defendants have only used the MN Payroll

16  Service. Since roll-out in March 2009, employees have a choice between direct deposit and the

17  MN Payroll Service. Accordingly, if an employee does not have a checking or saving account

18  (i.e., a demand deposit account), the employee must be paid through the MN Payroll Service.

19  The employees cannot choose to use a different payroll service provider, they cannot negotiate

20  the types of fees, the amount of fees or the frequency of fees, nor can they refuse to pay a fee.

21  Basically, all of Defendants' employees paid through the MN Payroll Service receive the same

22  program with the same terms and conditions without variation.  The MN Payroll Service has

23  certain charges that may be deducted from the employee's account. For instance, employees are

24  charged $.25 for a debit card transaction, $1.75 for a withdrawal from an out-of-network ATM,

25  or $6.00 for a replacement card. The type and amount of fees charged class members have been

26  consistent throughout the class period.

27  Plaintiffs allege that the Payroll Service unlawfully causes them to be charged fees for

28  access to their wages.  Plaintiffs have alleged nationwide and California classes. Plaintiffs have

alleged a nationwide breach of contract claim and a nationwide Fair Labor Standards Act claim, 29 U.S.C. § 201 *et seq.* Plaintiffs have also alleged Labor Code violations, Bus. & Prof. Code § 17200 *et seq.* violations, and conversion on behalf of a California class. Defendants deny Plaintiffs' allegations.

### B.    Procedural History of The Case

This matter was filed on October 25, 2013 in the Northern District of California and assigned Magistrate Judge Jacqueline Scott Corley. (ECF 1.) Plaintiffs Jeffrey Lapan and Ashwin Chandra filed this action against PVH Corp. alleging the following claims: (1) breach of contract; (2) Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") violations; (3) Labor Code violations; and (4) conversion. (*Id.*) Plaintiffs alleged a nationwide class and nationwide collective action for the breach of contract and FLSA violations, respectively, and a California class for Labor Code violations, Business & Professions § 17200 claims, and conversion.  (*Id.*)

On November 14, 2013, Plaintiffs filed a Notice of Pendency of Other Action or Proceeding pursuant to Local Rule 3-13 and identified *Scott-George v. PVH Corp.*, E.D. Cal. Case 2:13-cv-00441-TLN-DAD as a potentially related case. (ECF 7.) Plaintiffs attached a copy of *Scott-George's* Third Amended Complaint to the notice. (ECF 7, Ex. 1.) Counsel suggested that transfer pursuant to 28 U.S.C. 1407 would be appropriate. (*Id.*)

Also on November 14, 2013, Plaintiffs filed – in *Chavez v. PVH Corp.*, Case C 13-01797 – an Administrative Motion to Consider Whether Cases Should Be Related per Local Rule 3-12 and 7-11. The Administrative Motion identified the *Lapan* case as involving substantially the same parties, property, transaction and events as the *Chavez* matter and attached a copy of the *Lapan* complaint. (*Chavez*, ECF 39, 39-1.)

Additionally, on November 14, 2013, Plaintiffs filed a motion for an inter-district transfer in order to transfer this matter to this Department due to the pendency of *Chavez v. PVH Corp.*, Case C 13-01797 per 28 U.S.C. § 1404(b). (ECF 8.)

As a result of Defendant's filing a declination to proceed before Magistrate Judge Corley, the matter was re-assigned to Judge Yvonne Gonzales Rogers on November 22, 2013.

1   (ECF 18.) Accordingly, Plaintiffs re-noticed their motion for an inter-district transfer before

2   Judge Rogers pursuant to the re-assignment order.  (ECF 19.)

3          On December 9, 2013, Plaintiffs filed an Amended Complaint to add additional factual

4   allegations. (ECF 21.) On December 23, 2013, Defendant answered the Amended Complaint.

5   (ECF 24.)

6          On January 8, 2014, this Court granted Plaintiffs' motion to relate and re-assigned the

7   matter to this Department. (ECF 25.) Also on January 8, 2014, Plaintiffs' counsel herein

8   appeared at the *Chavez* Case Management Conference and informed the Court of the existence

9   of the *Lapan* action.

10         On March 25, 2014, the parties conducted their joint conference and Plaintiffs

11  propounded written discovery on Defendant consisting of both interrogatories and requests for

12  documents.  On April 7, 2014, the parties exchanged their initial disclosures.

13         On April 8, 2014, the parties filed their Joint Case Management Conference statement in

14  preparation for the Case Management Conference on April 16, 2014. (ECF 30.) After the April

15  16, 2014 Case Management Conference, the Court subsequently issued its Case Management

16  Conference Order setting dates for the completion of discovery, mediation, and trial. (ECF 33.)

17         Starting April 28, 2014, Defendant started responding to Plaintiffs' discovery requests

18  with both written responses and document production.

19         Based on information contained in Defendant's discovery responses, Plaintiffs began to

20  issue third-party subpoenas starting on May 15, 2014. Plaintiffs subpoenaed relevant records

21  from ADP, Inc., Money Network Financial, LLC, Metabank, and First Data Trust Company,

22  LLC.  Plaintiffs served a second subpoena on ADP in August 2014. Plaintiffs subsequently

23  engaged in multiple meet and confer sessions with the third parties which eventually resulted in

24  productions over the ensuing five months. The productions included, *inter alia*, the contracts

25  between Defendant and the third parties, an analysis of the features and benefits of the MN

26  Payroll Service, spreadsheets detailing the fees incurred by the named Plaintiffs for their use of

27  the MN Payroll Service, and a spreadsheet detailing the amount of fees charged to Defendant's

28  employees on a nationwide basis for their use of the MN Payroll Service. The spreadsheet

detailed the amounts of fees incurred by month, by state, and by type.

On June 5, 2014, Plaintiffs filed an objection to the *Chavez* Motion for Preliminary Approval. (*Chavez*, ECF 57.) Among other objections, Plaintiffs objected to the proposed reversion to Defendant of unclaimed funds. (*Id.*)

On June 11, 2014, Plaintiff filed a Motion to Amend the complaint to add additional named defendants Tommy Hilfiger Retail, LLC and PVH Retail Stores LLC. Plaintiffs also sought to add a cause of action under the Private Attorneys' General Act of 2004, Labor Code § 2699 *et seq*. (ECF 38.) On July 16, 2014, the Court granted Plaintiffs' Motion. (ECF 46.) Accordingly, Plaintiffs filed their Second Amended Complaint on July 16, 2014. (ECF 47.) Defendants filed an answer to the Second Amended Complaint on August 21, 2014. (ECF 64.)

On June 19, 2014, Plaintiffs' counsel appeared at the hearing for Preliminary Approval of Class Action Settlement in *Chavez* and argued the objections including the proposed reversion. On June 20, 2014, the Court denied *Chavez*'s Motion for Preliminary Approval. (*Chavez*, ECF 63.) Chavez and Defendant subsequently amended their settlement to delete the reversion and submitted it for approval which the Court ultimately granted on July 17, 2014. (*Chavez*, ECF 73.)

On July 23, 2014, Defendant served document requests on Plaintiffs which Plaintiffs responded to on August 25, 2014. On September 29, 2014, Defendant served interrogatories on Plaintiffs which they responded to on November 13, 2014. Defendant served a second set of document requests on October 3, 2014 which Plaintiffs responded to on October 31, 2014.

On August 1, 2014, the parties filed an updated Joint Case Management Conference Statement. (ECF 59.) As a result, the Court ordered the parties to attend private mediation. (ECF 61.) On September 19, 2014, the parties filed an updated Joint Case Management Conference Statement detailing the discovery efforts the parties were engaging in. (ECF 65.)

On October 28, 2014, Plaintiff took Defendant's Fed.R.Civ.P. 30(b)(6) deposition on a number of topics related to the Money Network Payroll Distribution Service. On October 29, 2014, Plaintiffs followed up the deposition with a second set of document requests.

On December 9, 2014, the parties engaged in a 12-hour, hard-fought private mediation

1    with mediator Lisa Bertain of Keesal, Young and Logan which resulted in coming to terms on

2    the fundamental aspects of the present settlement.  In anticipation of the mediation, the parties

3    submitted detailed mediation briefs and examined relevant data and calculations. Subsequent to

4    the mediation, the parties continued active negotiations on the details of the settlement that is

5    before this Court.

6         After filing an updated Joint Case Management Conference Statement informing the

7    Court of the settlement (ECF 71), the Court conducted a further Case Management Conference

8    on January 7, 2015 and ordered a further conference. (ECF 74.)

9         On March 26, 2015, Plaintiffs filed a Third Amended Complaint adding named plaintiff

10   Claudia Bleus and additional PVH Corp. related entities as defendants.  (ECF 84.)

11        On August 7, 2015, Plaintiffs' Motion for Preliminary Approval of Class Action

12   Settlement was granted. (ECF 93.)

13   **C.**     **The *Scott-George* Case Has No Impact on This Action.**

14        As this Court is aware, this action has both a nationwide class and a California class,

15   unlike the *Scott-George* action which concerns California claims only. Unlike the *Scott-George*

16   action, this action solely addresses issues arising from the use of the MN Payroll Services Card.

17   The *Scott-George* action has 8 subclasses addressing 8 separate issues and only belatedly

18   amended the complaint to include the MN Payroll Services Card issues at a much later date.

19   Further, in California, this action "dove-tails" the *Chavez* action in that the statutory period

20   begins the day after the *Chavez* statutory period ends.  Thus, the only "overlap" with *Scott-*

21   *George* is for a very limited period of time in California on one issue: the use of the MN Payroll

22   Services Card.

23        This Court has previously certified the action for purposes of settlement which means

24   that the Court analyzed the claims and settlement under the principles of Rule 23 and found that

25   the action was appropriate for certification of a settlement class.  This Court retains the inherent

26   jurisdiction to grant final approval and final certification of this settlement class.  *Churchill*

27   *Village, L.L.C. v. General Electric* (9th Cir. 2004) 361 F.3d 566, 572.

28

III.    DESCRIPTION OF THE SETTLEMENT.

A copy of the parties' Settlement Agreement was presented to the Court for consideration prior to the preliminary approval hearing, and was discussed at length in the Memorandum of Points and Authorities in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and the Wynne Declaration filed therewith. (ECF 85.)  A summary of the most salient terms of the Settlement will follow.

A.    Settlement Fund

In return for a release of claims pled in the Third Amended Complaint, Defendants shall pay, at a minimum, $725,000 into a non-reversionary settlement fund. This amount may increase depending on the actual amount of fees charged to Class Members through Preliminary Approval. After deductions for the Initial Payments defined as payments for attorney's fees and costs, class representative enhancement awards, and payment to the California Labor Workforce Development Agency (i.e., the Net Settlement Amount), if Participating Class Members had made claims in excess of the Net Settlement Amount, Defendants would have been required to increase the Class Settlement Amount to reimburse those fees in their entirety.

Within three (3) business days after final approval, Defendants will transfer the settlement fund to the Settlement Administrator who will maintain the fund in an interest bearing account at a federally-insured banking institution with all interest inuring to the benefit of the Class and Class Counsel and with the proviso that if the final approval order is appealed, the monies will be returned to Defendants until after the conclusion of all appeals (assuming the final approval is affirmed on appeal).

B.    Class Definition

There are a total of 63,819 individuals in the settlement classes approved by the Court. (Decl. of Lefebvre.)   The Court approved, and the parties have stipulated to, certification for settlement purposes only of the following classes:

1.    Nationwide Settlement Class: All current and former employees who worked for Defendants in the U.S. and U.S. territories, other than California, from October 25, 2009, through the date of preliminary approval and who were paid wages at any time via the

Money Network Payroll Distribution Service.

**2.** **FLSA Settlement Class:** All current and former non-exempt employees who worked for Defendants in the U.S. and U.S. territories, other than California, from October 25, 2010, through the date of preliminary approval and who were paid wages at any time via the Money Network Payroll Distribution Service.

**3.** **California Class:** This class consists of both (a) all current and former employees who worked for Defendants in California from July 17, 2014, through the date of preliminary approval by the Court and who were paid wages at any time after July 17, 2014, via the Money Network Payroll Distribution Service, and (b) all current and former employees who worked for Defendants in California from March 20, 2009, through the date of preliminary approval, who were paid wages at any time via the Money Network Payroll Distribution Service, and who affirmatively opted-out of the settlement in *Chavez v. PVH Corp., et al*., N.D. Cal. Case No. 13-01797. Part of the California Class starts on July 17, 2014 because that is the end of the class period in *Chavez v. PVH Corp., et al*., N.D. Cal. Case No. 13-01797.

**C.** **Class Representatives and Class Counsel**

The Court approved and the parties have stipulated that plaintiffs Jeffrey Lapan, Ashwin Chandra, and Claudia Bleus be appointed class representatives. (ECF 93.) Plaintiffs Lapan and Chandra worked in California during the class period. Bleus worked in Florida during the class period. All were paid through the MN Payroll Service and all incurred fees. Also, The Court approved and the parties have stipulated that Edward J. Wynne, Wynne Law Firm, be appointed class counsel. (ECF 93.)

**D.** **Plan of Allocation.**

**1.** **Net Settlement Fund:** After deductions for attorney's fees and costs, Class Representative Enhancement Awards, and payment to the California Labor Workforce Development Agency, the Net Settlement Fund will be distributed to all Participating Class Members. Plaintiffs estimate the Net Settlement Fund to be $ 532,061.12. Based on the 5,237 current Participating Class Members, each Class Member should receive approximately $101.59.

1    Payments to individual Class Members shall be calculated and apportioned from the Net

2    Settlement Amount based on the amount of fees paid by the Participating Class Member in

3    connection with their use of the MN Payroll Service.  The payment to each Participating Class

4    Member shall equal the fees paid by the Participating Class Member for use of the MN Payroll

5    Service.  But if the actual fees claimed by Participating Class Members total less than the

6    minimum Net Settlement Amount, the Individual Settlement Payments are to be increased

7    proportionately to equal 100% of the Net Settlement Amount minimum. The Claims

8    administrator is in the process of getting the actual data per class member from Meta Bank,

9    however, in light of the total claims made it is expected that each participating class member

10   will receive 100% of the fees incurred plus a proportional increase.

11        **2.    Attorney's Fees, Costs and Enhancements:** Pursuant to the parties'

12   agreement, Plaintiffs' counsel will be asking the Court to award the Ninth Circuit bench-mark

13   for attorney fees in class actions, i.e., 25% of the settlement fund or $181,250, plus costs not to

14   exceed $15,000. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998). In addition,

15   plaintiffs Lapan, Chandra, and Bleus will be asking for $2,500 each as Class Representative

16   Enhancements which is an amount that is half of what is considered presumptively reasonable

17   in the Northern District. *Villegas v. J.P. Morgan Chase & Co.,* No. CV 09-00261 SBA EMC,

18   2012 WL 5878390 at *7 (N.D. Cal. Nov. 21, 2012).

19        **3.    LWDA payment:** The parties have agreed that the value of the PAGA

20   claim is $5,000. Accordingly, 75% or $3,750, will be paid to the LWDA per Labor Code § 2699

21   (i) to settle this claim.

22   **IV.    STATUS OF THE CLAIMS PROCESS.**

23        On August 14, 2015, Rust received text for the Postcard Notice, Long-Form Notice and

24   Claim Form from Counsel. A draft of the formatted materials were prepared by Rust and

25   approved by the Parties.  (Levebvre Decl., ¶ 7.)  On August 18, 2015, Counsel for Defendants

26   provided Rust with a mailing list containing the Class Member's names, last known addresses,

27   Social Security Numbers, dates of birth, telephone numbers, and dates of employment (the

28   "Class List").  The Class List contained data for 63,819 potential Class Members.  (Levebvre

Decl., ¶ 8.)

The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. The NCOA contains requested changes of address filed with the U.S. Postal Service. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA would be utilized in connection with the mailing of the Postcard Notice. (Levebvre Decl., ¶ 9.)   On August 31, 2015, Postcard Notices were mailed to 63,819 Class Members contained in the Class List via First Class mail. The Postcard Notices advised Class Members that they could submit a Claim Form or request for exclusion postmarked by October 30, 2015.  (Levebvre Decl., ¶ 10.)  On November 16, 2015, at the request of the Parties, notices regarding the Settlement were posted in all Tommy Hilfiger, Calvin Klein and Van Heusen retail stores. (Levebvre Decl., ¶ 11.)

On November 20, 2015, at the request of the Parties, a supplemental Postcard Notice mailing was sent to the 57,820 Class Members who had not responded to the original Postcard Notice mailing. The supplemental Postcard Notice advised Class Members that they could submit a Claim Form or request for exclusion postmarked by January 6, 2016.  (Levebvre Decl., ¶ 12.)

In addition, Rust obtained a mailing address of Lapan v PVH Corp., c/o Rust Consulting, Inc. - 4819, P.O. Box 2395, Faribault, MN 55021-9092 to receive Claim Forms, requests for exclusion, undeliverable Postcard Notices and other communications regarding the Settlement.  (Levebvre Decl., ¶ 4.)  Rust also obtained a phone number of (888) 952-9081 for Class Members to call with questions regarding the Settlement. (Levebvre Decl., ¶ 5.)  Also a website was created and a web address was included in the Postcard Notice for viewing, downloading and/or printing the Long-Form Notices, obtaining information about the proposed Settlement, and filing a Claim Form. The web address included in the Postcard Notice was www.pvh-lapansettlement.com.  (Levebvre Decl., ¶ 6.)

As of December 16, 2015, 8,278 Postcard Notices have been returned as undeliverable from the original mailing. Of the 8,278 Postcard Notices returned as undeliverable from the

original mailing, Rust performed 7,697 address traces on Postcard Notices returned as undeliverable for the first time. The address trace utilizes the Class Member's name, previous address and Social Security Number for locating a current address. Of the 7,697 traces performed, 6,010 more current addresses were obtained and Postcard Notices were promptly re-mailed to those Class Members via First Class mail. Of the 7,697 traces performed, Rust did not obtain updated addresses for 1,687 undeliverable Postcard Notices. Of the 6,010 Postcard Notices mailed to a more current address identified from trace, 1,020 Postcard Notices were returned to Rust as undeliverable a second time. Thus, 3,299 Postcard Notices remain undeliverable (Levebvre Decl., ¶ 13.)

Additionally, 269 Postcard Notices from the original mailing were returned by the Post Office with forwarding addresses attached. Rust promptly re-mailed Postcard Notices to those Class Members via First Class mail.  (Levebvre Decl., ¶ 14.)  Rust received 73 paper Claim Forms, and 5,165 Claim Forms submitted via the Website, for a total of 5,238 Claim Forms. Of the 5,238 Claim Forms received, two (2) Class Members submitted Claim Forms with incomplete information and were sent a letters asking to supply the missing information. Of the two (2) Class Members, who were sent letters, one (1) Class Member re-submitted a complete Claim Form and one (1) Class Member did not re-submit a complete Claim Form. Therefore, of the 5,238 Claim Forms received, 5,237 Claim Forms are considered complete and one (1) Claim Form is considered incomplete. The 5,237 Class Members, who submitted a complete Claim Form, represents approximately 8.21% of 63,819 total Class Members.. (Levebvre Decl., ¶ 15.) There have been eight (8) requests for exclusion and zero (0) objections. (Levebvre Decl., ¶ ¶ 16, 17.)  The fees incurred by the Claims Administrator totaled $133,565.00.  (Levebvre Decl., ¶ 19.) That amount is to be paid by Defendant separately and not from the Net Settlement Fund.

## V.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE.

Pursuant to both state and federal rules of civil procedure, "a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. . ." *See, e.g.*, CCP § 1781(f); Fed. R. Civ. P. 23(e).   In deciding whether to grant final

approval to a proposed class action settlement, the courts' overriding concern is whether the proposed settlement is "fair, adequate, and reasonable." *Dunk v. Ford Motor Company*, 48 Cal. App. 4th 1794, 1801 (1996) (quoting *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625, (9th Cir. 1982) cert. denied 459 U.S. 1217).  Plaintiffs submit the Settlement in this case is fair, adequate and reasonable and should be given final approval.

### A.        The Settlement is Entitled to a Presumption of Fairness

A class action settlement is entitled to a presumption of fairness when:  (1) the settlement is reached through arm's length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and, (4) the percentage of objectors is small.  *Dunk v. Ford Motor Company, supra*, 48 Cal. App. 4th at 1802.

### 1.        The Settlement was Reached Through Arm's Length Negotiations

This Settlement was the result of extensive and hard-fought settlement negotiations. Here, the parties conducted intense negotiations, including production of volumes of payroll data and the exchange of expert calculations.  The parties used a mediator knowledgeable in field of wage and hour class actions to assist in the process.  There can be no serious doubt that the Settlement was reached through arm's length bargaining.

A "proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved had plaintiffs prevailed at trial." *Id*.  It is axiomatic that,

> a settlement need not obtain 100 percent of the damages sought in order to be fair and reasonable…Compromise is inherent and necessary in the settlement process.  Thus, even if 'the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated,' this is no bar to a class settlement because 'the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation.'

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th at 250 (2001) (citations omitted).

In this case, the settlement amount represents one hundred percent (100%) of the actual damages incurred by each class member.  Given the inherent risks in this case, which were discussed at length in the Motion for Preliminary Approval, including the risk that the case

would not be certified, could be decertified, that Plaintiffs could not establish class wide liability or damages, or any of the other risks inherent in litigation, Plaintiffs submit that one hundred percent (100%) of the actual potential damages is more than fair, adequate and reasonable resolution.

**2.        Substantial Investigation has Been Completed to Warrant Settlement**

The stage of the proceedings and the amount of investigation completed is an important factor that the courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *In re Warner Communications Sec. Litig.,* 618 F. Supp. 735, 741 (S.D.N.Y. 1985) affíd, 798 F.2d 35 (2d Cir. 1986); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N. D Cal. 1980) affíd., 661 F. 2d 93 9 (9th Cir. 1981); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).  Here, extensive discovery was conducted as outlined in the Motion for Preliminary Approval.

**3.        Class Counsel is Experienced and Endorses the Settlement**

Experienced counsel operating at arm's length have weighed all of the foregoing factors and endorse the proposed settlement.  As the courts have explained, the view of the attorneys actively conducting the litigation is "entitled to significant weight."  *Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); see also, *Ellis*, 87 F.R.D. at 18; *Boyd*, 485 F. Supp. at 616-17.

Class Counsel have experience, not only in class actions and employment litigation, but specifically in wage and hour class actions.  *See,* Wynne Decl.  Thus, Class Counsel is experienced and qualified to evaluate the class claims and viability of the defenses.  Class Counsel are satisfied that the recovery for each Class Member is fair and reasonable taking into consideration the potential recovery as compared to the actual recovery assured pursuant to the Settlement, the amounts received in other similar overtime class actions, the stage of the litigation when the Settlement was reached, the risks inherent in any litigation and the specific risks in this case, and the reasonable tailoring of each Class Member's claim to the amounts received.  This settlement is fair, adequate and reasonable and in the best interests of the Class.

**4.        The Percentage of Objections is Zero**

1        Perhaps the most significant endorsement for the proposed settlement in this case is the
2  fact that <u>not a single Class Member</u> has objected to any aspect of the proposed settlement.  Class
3  Members were specifically provided with the option of objecting to the terms of the Settlement
4  and not a single objection was filed or served.  The final factor in *Dunk* is that the percentage of
5  objectors is small.  Here, there are no objections.  This Court should properly construe the lack
6  of any expressed opposition to the Settlement as a strong indicator that the Class Members view
7  the settlement as fair, adequate and reasonable.

8      **B.**     **The Risk and Expense of Further Litigation**

9        At the final approval hearing the Court may consider other relevant factors, such as the
10  strength of the plaintiffs' case, the risk, expenses, complexity and likely duration of further
11  litigation, the risk of maintaining class action status through trial, the amount offered in
12  settlement, the extent of discovery completed and the stage of the proceedings, the experience
13  and views of counsel, the presence of a governmental participant and the reaction of the Class
14  Members to the proposed settlement.  *Officers for Justice v. Civil Service Com., supra*, 688 F.2d
15  at 624.  "This list is not exhaustive and should be tailored to each case.  Due regard should be
16  given to what is otherwise a private consensual agreement between the parties."  *Dunk v. Ford
17  Motor Company, supra*, 48 Cal. App. 4th at 1801.

18        The risks, complexity, and expenses of this action and the expected duration of this
19  litigation all weigh in favor of final approval.  Given the uncertain nature and ever-changing
20  landscape concerning how class action cases such as this can properly be tried, both in this state
21  and nationwide, Plaintiffs faced significant risk that, even assuming a judgment in their favor,
22  the judgment would be reversed and or remanded on any number of grounds by the Ninth
23  Circuit or by the Supreme Court.  For example, Plaintiffs faced significant risk that the case
24  would not be certified or would be decertified, either prior or during trial or thereafter by the
25  Ninth Circuit and/or the Supreme Court.  Plaintiffs faced unique risks of decertification and/or
26  re-trial in this case in light of the novel claims asserted and the potential for significant
27  differences among Class Members.

28        Furthermore, the costs of litigating an action on behalf of over 63,000 potential Class

1    Members are massive, and Class Counsel would incur these costs at the potential risk of

2    recovering nothing for any of them.  The costs already expended in litigating this case amounted

3    to $11,786.33.  Assuming a class was certified by the Court, enormous costs would have been

4    incurred throughout the discovery process in the potential taking of tens or even hundreds of

5    depositions of Class Members.  Furthermore, if this case proceeded to trial and assuming a

6    judgment in favor of Plaintiffs, these costs would increase significantly throughout the appellate

7    process and potential re-trial of this action.

8         **C.**     **The Amount Offered in Settlement**

9         Unlike many class action settlements negotiated on a reversionary basis where the

10   defendant only pays out a percentage of the total settlement amount based on the actual amount

11   of work weeks claimed by the class members, this settlement is non-reversionary.  In other

12   words, it is a "total payout" settlement.  This means that Defendant will pay the full settlement

13   pf $725,000 regardless of how many claims are received –in addition to paying for the entire

14   cost of administration which exceeds $130,000.  Therefore, Participating Class Members will be

15   able to share on a pro rata basis the shares of any non-participating Class Member, thus

16   increasing their per share recovery.  Class Counsel submits that because of the non-reversionary

17   nature of the Settlement, the Participating Class Members will receive more than 100% of their

18   actual damages which is a strong factor in support of granting final approval.

19   **VI.**     **THE REQUESTED INCENTIVE AWARDS SHOULD BE APPROVED.**

20        In this case, the parties' request approval of a modest incentive award for the three (3)

21   Court appointed Class Representatives, Jeffrey Lapan, Ashwin Chandra, and Claudia Bleus, in

22   the amount of Two Thousand Five Hundred Dollars ($2,500) each.  "Courts routinely recognize

23   and approve incentive awards for class representatives" for the services they provided and the

24   risks they incurred during the course of the class action litigation. *Wineland, et al. v. Casey's*

25   *General Stores, et. al.,* 267 F.R.D. 669, 677 (S.D. Iowa 2009); *Rodriguez v. West Publ'g Corp.*,

26   563 F.3d 948, 958-59 (9th Cir. 2009).

27        To evaluate proposed incentive awards courts often consider numerous factors such as

28   the risk undertaken in bringing the action, the personal difficulties encountered by class

representatives, the amount of time and effort spent by the class representatives, the duration of the litigation and the benefits conferred to the class as a result of the efforts of the class representatives.  *See, e.g.*, *In re Bluetooth Headset Products Liability Litigation,* 654 F.3d 935 (9th Cir. 2011); *In re Mercury Interactive Corp.,* 618 F.3d 988, 992 (9th Cir. 2010); *Gribble v. Cool Transports, Inc.*, 2008 WL 5281665 (C.D. Cal. 2008); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002).  *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 WL 3352460 * 11.

As evidenced by the declarations of Mr. Lapan, Mr. Chandra, and Ms. Bleus, these factors support the request awards.  First, the named Plaintiffs took significant financial risks by filing these actions.  Second, Mr. Lapan, Mr. Chandra, and Ms. Bleus are giving up significant rights that other Class Members are not giving up.  For example, Defendant required that the named Plaintiffs sign a General Release rather than the limited release appreciated to the other Class Members.  Third, Mr. Lapan, Mr. Chandra, and Ms. Bleus have invested time and effort in these cases in order to confer substantial economic benefits for their co-workers.  Mr. Lapan, Mr. Chandra, and Ms. Bleus were extremely helpful to Class Counsel throughout all stages of this case, including pre-filing investigation, discovery, and the settlement process. (Lapan Decl. ¶ 8; Chandra Decl. ¶ 8; Bleus Decl. ¶ 8.).  The named Plaintiffs provided Class Counsel with records that revealed the Defendant's alleged wrongdoing.  (Lapan Decl. ¶ 8; Chandra Decl. ¶ 8; Bleus Decl. ¶ 8.)  Class Counsel had conferences with the Class Representatives prior to filing and throughout these actions. (Lapan Decl. ¶ 8; Chandra Decl. ¶ 8; Bleus Decl. ¶ 8.)  The Representatives were extremely helpful to Class Counsel in understanding Defendants' policies and procedures.   (Lapan Decl. ¶ 8; Chandra Decl. ¶ 8; Bleus Decl. ¶ 8.)   The Class Representatives contacted witnesses and provided names of witnesses for class Counsel to contact.  (Lapan Decl. ¶ 8; Chandra Decl. ¶ 8) The fact that a favorable award for a large class has been obtained is due in large part to the commitment of Mr. Lapan, Mr. Chandra, and Ms. Bleus over the course of this litigation.

In this case, the proposed incentive awards are very modest compared to the aggregate value of the settlement compensation being conferred to the putative class as a whole.  In fact,

each of the incentive awards being requested is 0.003% of the entire settlement.  Class Counsel submits that the incentive awards requested are less than what is commonly awarded in cases such as these.  (Decl. of Wynne) As this Court recognized in the case of *Ching v. Siemens Indus.,* 2014 WL 2926210 "in this District, a $5,000 incentive award is presumptively reasonable." *Id.* at *9.

Finally, in *Lo Re v. Chase Manhattan Corp.,* 1979 WL 236(S.D.N.Y. May 25, 1979), the court recognized that one of the facts that should be considered in determining that the incentive awards were fair was the fact that none of the absent class members had objected to these payments. *Id.* at *6.  In the instant case, the requested incentive awards were disclosed in the Notice sent to all potential Class Members and not a single Class Member objected to the incentive awards.

As a result, Plaintiffs submit that the requested incentive awards are fair and reasonable and should be approved.

## VII.   CLASS COUNSEL'S ATTORNEY'S FEES AND LITIGATION EXPENSES SHOULD BE APPROVED.

Class Counsel hereby requests an award of $181,250 (twenty five percent of the total settlement) plus litigation expenses of $11,786.33.  Class Counsel submits that the fee request is fair and reasonable under the percentage of recovery method given the overall result; the benefit provided to the Class; the substantial risks of this litigation; the complexity of this case and the novel issues presented.  Likewise, Class Counsel submits that using the lodestar method as a cross-check confirms the fairness and reasonableness of the fee request.  Finally, it should be noted that all of the Class Members were notified that Class Counsel would seek a fee of $181,250 in this case and not a single Class Member objected to that fee request.  As a result, Class Counsel requests that their fee request be approved.

### A.   Class Counsel's Fee

In a certified class action such as this, the Court may award reasonable attorney fees and costs that are authorized by law or pursuant to the parties' agreement.  Fed.R.Civ.P. 23(h).  In this case, Class Counsel were retained pursuant to a contingency fee agreement, wherein they

1   would be paid 25% of the common fund recovery in this case. (Decl. of Wynne) These
2   agreements, like all provisions in the settlement, are subject to the Court's determination of
3   whether they are fundamentally fair, adequate, and reasonable. *Stuart v. Radioshack Corp.,* No.
4   C-07-4499 EMC, 2010 WL 3155645, at *5 (N.D. Cal. Aug. 9, 2010) citing *Staton v. Boeing*
5   *Co.,* 327 F.3d 938, 963 (9th Cir.2003). Class Counsel submits their fee request is fair, adequate
6   and reasonable and should be approved.

7        Where a settlement produces a common fund for the benefit of the entire Class, Courts
8   have discretion to employ either the percentage of recovery method or the lodestar method. *See,*
9   *e.g.*, *In re Bluetooth Headset Products Liability Litigation,* 654 F.3d 935 (9th Cir. 2011); *In re*
10  *Mercury Interactive Corp.,* 618 F.3d 988, 992 (9th Cir. 2010); *Gribble v. Cool Transports, Inc.*,
11  2008 WL 5281665 (C.D. Cal. 2008); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir.
12  2002). When the percentage method is used to determine the reasonableness of attorneys' fees,
13  the Ninth Circuit has established a benchmark of twenty-five percent (25%) of the common
14  fund amount. *Powers v. Eichen,* 229 F.3d 1249 (9th Cir. 2000). This benchmark percentage,
15  however, is simply a starting point and should be adjusted when the individual circumstances
16  indicate that an adjustment is appropriate. *Vizcaino*, 290 F.3d at 1048. Within the Ninth
17  Circuit, it is generally recognized that "it is common practice to award attorney's fees at a
18  higher percentage than the twenty-five percent (25%) benchmark in cases that involve a
19  relatively small – i.e., under ten million dollar ($10 Million) – settlement fund. *Greko v. Diesel,*
20  *U.S.A., Inc.*, 2013 WL 1789602 (N.D. Cal. April 26, 2013).

21       The Court's determination of a fair and reasonable attorney fee must take into account
22  all of the circumstances of the case, including: 1) the result achieved; 2) the risk involved in the
23  litigation; 3) the skilled required and quality of work by counsel; 4) the contingent nature of the
24  fee; and 5) awards made in similar cases. *Ching*, 2014 WL 2926210, at *7; *Vizcaino*, 290 F.3d
25  at 1048-50. Additionally, even when applying the percentage of recovery method, the Court
26  will generally use the lodestar method as a cross-check to determine the fairness of the fee
27  award. In the instant case, when taking into account the relevant factors, Class Counsel submits
28  that an award of 25% of the total settlement or $181,250 is fair and reasonable.

### 1.    The Result Achieved

The overall result and benefit to the Class from the litigation is generally the most critical factor in granting a fee award.  *Ching*, 2014 WL 2926210, at *7.  Here, the results achieved in this case were very favorable in light of the fact that all Participating Class Members are getting more than their actual damages.

### 2.    The Risk Involved in the Litigation

The risks of litigation in this case were substantial.  All of Plaintiffs' claims arise out of Defendants' use of the Money Network Payroll Distribution Service. The technology and the use of it in this fashion to pay employees are relatively new developments. The claims alleged herein are novel and, consequently, there is a decided dearth of authority in this area. Indeed, it appears the only detailed discussion of these payment systems related to the claims made herein is two Opinion Letters from the California Labor Commissioner. See, O.L. 2008.07.07 and O.L. 2008.07.07-2. Both of the Opinion Letters examined the use of payroll card programs and provided some basic guidance based on the Labor Commissioner's analysis of Labor Code §§ 212 and 213. The Labor Commissioner found that for a payroll card program to not violate the Labor Code, the program must be an alternative payment method for the employee, and the employee must be able to use the card at least once per pay period without incurring a fee. See, generally, O.L. 2008.07.07 and O.L. 2008.07.07-2. Of course, aside from the fact that the California Labor Commissioner's Opinion Letters are not binding on this Court, the Labor Commissioner only examined the payroll services in the context of the California Labor Code and certainly not under the FLSA or Plaintiffs' common law claims for breach of contract or conversion. Notwithstanding, it is worth noting that one of the payroll card programs the Labor Commissioner examined was the MN Payroll Service at issue herein which the Commissioner found to be in compliance with California law. See, O.L. 2008.07.07-2.

Here, Defendants first contend that the MN Payroll Service is one alterative form of payment because if employees have a bank account, then they can receive their wages through direct deposit. Defendants also allege that employees who use the MN Payroll Service have immediate access to all of their wages and can access their full wages without incurring any fees

1   by doing any of the following:  (1) using one or more of the Money Network checks; (2) using

2   the ADP TotalPay Visa Card as a credit card; (3) electronically transferring funds to a personal

3   bank account; (4) withdrawing funds from an in-network ATM (with a list of all in-network

4   ATMs provided on the Money Network website); and (5) using the card to access funds from a

5   bank teller. Thus, Defendants contend, the foundation to all of Plaintiffs' claims is missing and

6   all are based on the incorrect premise that the fees incurred are somehow illegal.

7          Defendants also contend that the materials they provide to all employees explicitly

8   explain the MN Payroll Service and all fees that may be incurred.  Employees are made aware

9   of the numerous ways to use the program without incurring fees through literature provided by

10  PVH, including a Welcome Packet and a "Frequently Asked Questions" List that are provided

11  to all employees.  Thus, after the employee's full wages are deposited, Defendants argue that

12  the employee makes a voluntary choice regarding how she wishes to receive her funds at all

13  times.

14         Specifically with respect to the breach of contract claims, Defendants argue this claim is

15  highly speculative and subject to significant hurdles both substantively and procedurally.

16  Defendants argue that there is no contract between Defendants and the Class because statements

17  made in an employee handbook do not constitute a contract. Indeed, even the handbook itself

18  specifically disavows the creation of a contract.  Defendants also contend that no oral contracts

19  were made with employees and even if they were, no class could be certified based on alleged

20  oral contracts.

21         As for the FLSA claims, Defendants contend that the MN Payroll Service pays the

22  employees free and clear and without reduction. 29 CFR § 531.35; see also, *Takacs v. A.G.*

23  *Edwards and Sons, Inc.,* 444 F.Supp.2d 1100 (S.D. Cal. 2006) [discussing "free and clear

24  payment"]. Moreover, Defendants contend that even if the MN Payroll Service does not "finally

25  and unconditionally" pay the wages due, the instances where such non-payment would result in

26  minimum wage and/or overtime violations is *de minimus* because nearly all employees made

27  more than the federal minimum wage. Further, Defendants will contend that because Plaintiffs

28  will not be able to show that Defendants' conduct was knowingly in violation of the law or in

1   reckless disregard of the law (see, *McLaughlin v. Richland Shoe Co.*, 486 US 128, 131–135,

2   (1988)), Plaintiffs will not be entitled to a third year of damages per 29 U.S.C. 255(a) even if

3   they were to overcome the other challenges to state a claim.  Moreover, Defendants believe that

4   even if Plaintiffs show an FLSA violation, Defendants could overcome the presumption of

5   liquidated damages because they had a "good faith" belief and objectively "reasonable grounds"

6   for believing their conduct was lawful. *See Chao v. A-One Medical Servs., Inc.*, 346 F.3d 908,

7   920 (9th Cir. 2003) (noting defendants' case would have been different with "some objective

8   authority" that their wage-payment practices were legal). *See also, e.g., Flores v. City of San*

9   *Gabriel*, No. CV 12-04884-JGB, 2013 WL 5817507 at *3-4 (C.D. Cal. Oct. 29, 2013) (finding

10  no double damages where there was no binding case law on pay practice used by employer and

11  the employer took steps to ensure proper payment); *Ulin v. ALAEA-72, Inc.*, No. C-09-3160-

12  EDL, 2011 WL 723617 at * 15 (N.D. Cal. Feb. 23, 2011) (finding no liquidated damages where

13  defendant was generally aware of FLSA requirements and believed he was complying).

14      With respect to the California claims, Defendants argue that the MN Payroll Service did

15  not deny Class Members full access to their wages. Accordingly, there is no violation of

16  Plaintiffs' core claims under Labor Code §§ 212, 216, 221 and 224 for failure to pay wages due

17  and owing. Therefore, Defendants contend that Plaintiffs' derivative claims under Labor Code §

18  203 (waiting time penalties), § 226 (wage statements), § 510 (overtime), § 1182.11, 1182.12,

19  1194 (minimum wages), § 2802 (unlawful deductions), and § 2699 (PAGA penalties) likewise

20  fail. Similarly, Defendants contend that Plaintiffs' other derivative claims under Bus. & Prof.

21  Code § 17200 and conversion do not succeed for the same reasons.

22      While Plaintiffs are confident in their claims, they recognize that they are novel and

23  untested and would face significant hurdles at both certification and trial. However, Plaintiffs

24  note that novelty cuts both ways. As such, Plaintiffs submit that a settlement at this juncture is

25  in the best interests of the class.

26          **3.      The Skill Required and Quality of Work by Counsel**

27      The complexity of this case and the novelty of the issues presented required a high level

28  of skill and knowledge regarding wage and hour class action law.  As evidenced by the

1    Declarations filed by Class Counsel, it is respectfully submitted that Class Counsel has unique

2    skills and qualifications in the area of wage and hour class action litigation.  Class Counsel has

3    tried several wage and hour class action cases which is extremely rare.  As a result, Class

4    Counsel understands first-hand the risks and difficulty associated with actually taking a wage

5    and hour class action to trial.  Likewise, Class Counsel's experience in litigating such important

6    wage and hour cases such as *Sav-On* and *Duran* is evidence of Counsel's skill.

7         In addition, this case posed significant challenges on the merits.  As an initial matter, the

8    case required significant skill in identifying an issue that was not even brought up by the client.

9    It was Counsels' skill in the wage and hour field that allowed them to determine the alleged

10   violations not just for Plaintiffs but that the alleged violation was potentially on a class-wide

11   basis.

12              **4.      The Contingent Nature of the Fee**

13        Class Counsel took this case on a contingency fee basis.  Courts have long recognized

14   that the public interest is served by rewarding attorneys who assume representation on a

15   contingent basis with an enhanced fee to compensate them for the risk that they might be paid

16   nothing at all for their work.  *In Re Washington Public Power Supply System Sec. Litig.*, 19 F.3d

17   1291, 1299 (9th Cir. 1994).

18        Neither Mr. Lapan, Mr. Chandra, nor Ms. Bleus had the financial means to pay Class

19   Counsel on an hourly basis to prosecute this case.  Thus, without the willingness of Class

20   Counsel to take this case on a contingency fee basis, this case would not have been prosecuted

21   and the Class would have received nothing.

22        This lawsuit has been pending for two years.  During that time, Class Counsel has put in

23   over 380 hours on behalf of the Class Members without any form of payment.  During that time,

24   Class Counsel had to forego other cases and financial opportunities in order to prosecute this

25   case on behalf of the Class Members.   Class Counsel's efforts to date have been without

26   compensation of any kind, and the fee has been wholly contingent upon the result achieved.

27        Class Counsel respectfully submits that given the risk of non-payment; the forfeiture of

28   other business opportunities; and the lack of compensation for two years combined with the

1    complexity of this case, the requested fee in this case is fair and reasonable.

2              **5.       Awards Made in Similar Cases**

3              Class Counsel submits that the request for attorney fees in the amount of 25% of the

4    common fund falls within the range of acceptable attorney fees in the Ninth Circuit for cases of

5    this size and complexity.  *Stuart v. Radioshack Corp.*, supra, (33% in wage and hour case);

6    *Glass v. UVS Fin. Serv., Inc.*, 2007 WL 221862 at *4 (N.D. Cal. Jan. 26, 2007) (finding

7    settlement of a wage and hour class actions for 25% - 35% of the claimed damages to be

8    reasonable in light of the uncertainties involved in the litigation); *Vasquez v. Coast Valley

9    Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "the typical range of acceptable

10   attorney fees in the 9th Circuit is 20% - 33% of the total settlement value; *In Re Pacific

11   Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of

12   fund); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064 at *6-7 (N.D. Cal. 1997) (approving

13   a fee of 33% of fund) *In Re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (ND. Cal. 1989)

14   (32.8% of fund).

15             **6.       No Objection from the Class and Support for the Representative
                          Plaintiffs**
16

17             There were no objections from any Class Member to the requested fee.  Class Counsel

18   submits that the lack of objection from the Class Members further demonstrates the

19   reasonableness and fairness of Class Counsel's fee request.  *See*, *In re Wells Fargo Loan

20   Processor Overtime Pay Litigation* (N.D. Cal., Aug. 2, 2011, MDL C-07-1841 EMC) 2011 WL

21   3352460, at *10; In *Ching v. Siemens Industry, Inc.* (N.D. Cal., June 27, 2014, 11-CV-04838-

22   MEJ) 2014 WL 2926210, this Court commented that "the lack of objection from the class after

23   notice further demonstrates the reasonableness and fairness of Class Counsel's fee request.  *Id.*

24   at *8.

25             Finally, as evidenced by their declarations, the Class Representatives strongly support

26   Class Counsel's Fee Request (Lapan Decl. ¶ 14; Chandra Decl. ¶ 14; Bleus Decl. ¶ 14.)

27             **7.       The Lodestar Method Supports Class Counsel's Fee Request**

28             District Courts within the Ninth Circuit have also used the lodestar method to cross-

1  check a fee award based on the percentage method, as "the lodestar may provide a useful

2  perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050.

3      The lodestar cross-check calculation "need entail neither mathematical precision nor

4  bean counting… [courts] may rely on summaries submitted by the attorneys and need not

5  review actual billing records." *Covillo v. Specialty's Café*, 2014 WL 954516, at *6 (N.D. Cal.

6  March 6, 2014) citing *In Re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005).

7      In the instant case, Class Counsel worked on this case for two years.  During that time,

8  Class Counsels' offices collectively invested approximately 400 hours on in prosecuting this

9  case on behalf of the Class.  The time spent and the fees incurred were reasonable and necessary

10  for the successful prosecution of this case.  Should the Court require review of Class Counsels'

11  detailed and contemporaneous billing records, Class Counsel will provide such records for the

12  Court's review *in camera*.  A summary of my firm's hours and lodestar by biller are set forth

13  below:

| WYNNE LAW FIRM LODESTAR SUMMARY | | | |
|---|---|---|---|
| | **Hourly Rate** | **Total Hours** | **Total Fees** |
| Edward J. Wynne | $750.00 | 368.15 | $276,112.50 |
| J.E.B. Pickett | $650.00 | 25.6 | $16,640.00 |
| Heidi Hall (Paralegal) | $250.00 | 4 | $1,000.00 |
| | | 397.75 | **$293,752.50** |

20      Thus, the total fee request of $181,250 is actually <u>less</u> than Counsels' lodestar.  The

21  requested rates are reasonable as substantiated by Counsels' declarations.

22      The lodestar cross-check confirms the reasonableness of the requested fee and Class

23  Counsel respectfully submits that the requested fee should be approved.

24      **B.**    **Class Counsel's Litigation Expenses**

25      Class Counsel requests that the Court grant final approval to Class Counsels' request for

26  reimbursement of their actual costs incurred in prosecuting this action.  Class Counsels' actual

27  out-of-pocket expenses total $11,786.33 which includes projected future costs of $97.45

28  incurred for courier and travel expenses for the instant hearing.

The requested costs of $11,786.33 were reasonably incurred and no Class Member has objected to the requested costs.

A summary of my firm's actual costs are as follows:

| Account | Current Costs | Future Costs |
|---|---|---|
| Copies | $14.80 | $7.50 |
| Court Reporter Transcripts | $298.80 | |
| Courtcall | $44.00 | |
| Depositions | $1,117.85 | |
| Filing Fee | $400.00 | |
| Legal Research | $1,936.67 | |
| Mediation Fees | $3,200.00 | |
| Postage\Courier | $886.61 | $14.95 |
| Printing\Ref Materials | $19.00 | |
| Process Serving | $2,002.63 | |
| Research | $194.48 | |
| Travel\Meals\Auto | $1,574.04 | $75.00 |
| | **$11,688.88** | **$97.45**   **$11,786.33** |

All of the expenses were reasonably incurred in prosecuting the case and are reasonable in their amount.  As a result, Class Counsel requests that the Court approve reimbursement of $11,786.33 for litigation expenses.

## VII.    CONCLUSION

In light of the forgoing, Plaintiffs respectfully request that the Court grant the motion for preliminary approval of the class action settlement and certify the proposed classes.


Dated:  December 17, 2015                          WYNNE LAW FIRM

                                                  /s/ *Edward J. Wynne*
                                                  Edward J. Wynne
                                                  Attorneys for Plaintiffs